UNITED STATES of America, Appellee,

v.

Russell Charles CURRIER, Defendant-Appellant.

No. 239, Docket 32019.

United States Court of Appeals Second Circuit.

Argued Dec. 12, 1968.

Decided Jan. 10, 1969.

Jack Kaplan, Asst. U. S. Atty., Southern District of New York (Robert M. Morgenthau, U. S. Atty., and Douglas S. Liebhafsky, Asst. U. S. Atty., on the brief), for appellee.

Joshua N. Koplovitz, of Koplovitz & Fabricant, New York City, for defendant-appellant.

Before MOORE, SMITH and HAYS, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

This is an appeal from a judgment on jury verdict of guilty in the United States District Court for the Southern District of New York entered December 7, 1967, John F. X. McGohey, Judge, convicting appellant of bail jumping, in violation of 18 U.S.C. § 3146, and sentencing him to a term of imprisonment of three years. We find no error and affirm the judgment.

Currier was arrested on March 24, 1966 pursuant to a warrant issued on a complaint charging him and two others with mail and wire fraud. He was released on $1,000 bail on the following day. On August 1, 1966 an indictment was filed charging Currier with mail and wire fraud, and shortly thereafter Currier's attorney telephoned him and informed him that he was required to appear in court for a pleading on August 3. Currier failed to appear. The case was adjourned one day, and Currier's attorney again telephoned him and told him he was required to appear for pleading on August 4. On August 4 Currier again failed to appear, whereupon his bail was forfeited and a bench warrant was issued.

Currier remained a fugitive for more than nine months, traveling from Maine to Florida, and never staying in one place for more than a few days. He transferred the registration of his station wagon from New York to Maine on August 23, 1966. On November 10, 1966 Currier was informed by an acquaintance whom he had telephoned that the police and a postal inspector were looking for him and that he was a "wanted man." Currier declined to say where he was and replied, "In that case, I better hang up and leave." During all

the previous events, Currier had been living under the name David W. Ren. On February 27, 1967 Currier transferred the registration of his automobile from Maine to Connecticut. Shortly thereafter he obtained employment in Ridgewood, New Jersey under the name James David. He was finally apprehended on May 16, 1967 at a house he had rented in Waldwick, New Jersey.

At the trial, Currier testified on his own behalf, admitting that he had been contacted by his attorney and that he knew that he was supposed to appear in court, and that if he didn't appear he would be arrested. He also admitted that he deliberately chose not to surrender himself, and that he was being sought by the authorities. His defense was, however, that while driving to a motel in New Jersey which had accommodations for his German shepherd dog, he apparently either blacked out or suffered an attack of amnesia, and remembered nothing further until he found himself driving on U. S. Route 1 in Maine and heading toward Portsmouth, New Hampshire.

He admitted, however, that immediately upon waking from the alleged "trance" he knew he was suppose to appear in court and failed to do so. To justify his failure to surrender thereafter, appellant testified that he became "tired, confused, and worried" about what would happen to him if he went back, and what would happen to his dog, which had been his companion for fourteen years, if he were put in jail. Currier admitted that he subsequently moved around quite a bit, traveling about the Eastern Seaboard as far as Florida, claiming that he was "confused" and that he moved around because he had difficulty finding motels that were willing to accommodate his dog.

On cross-examination it was brought out that Currier had been convicted on three prior occasions of bad check charges in Connecticut in 1948–49. Currier had also forfeited bail on a criminal charge in Los Angeles, California, while under the name of Raymond Scott in 1959.

Currier was examined by two court-appointed psychiatrists for the purpose of determining whether he was competent to stand trial. Dr. Abrahamsen, based on two examinations of Currier and consultation with Currier's personal physician, Dr. Blier, rendered a report on August 12, 1967 indicating that he found no neurological abnormalities with the exception of signs of malingering, but nonetheless recommended further study in light of Currier's claim of memory lapses and his history of syphilis, treated by Dr. Blier in 1961. Currier was accordingly transferred to Bellevue Hospital. A second report, issued by Dr. Lubin, stated that there was no evidence of syphilis of the central nervous system, psychosis, nor of neurological abnormalities. He further concluded that Currier was competent, having merely a "personality pattern disorder/antisocial." Specifically noting Currier's claimed memory lapses as a justification for his having jumped bail, Dr. Lubin concluded: "It is the opinion of the interviewer that while his memory appears vague for certain topics, it appears to be in service of evasion."

Following Currier's return from Bellevue, appellant's counsel, Quinlan, made a motion that a retained private psychiatrist and appellant's private physician [Blier] be permitted to visit and examine Currier. Subsequently, Quinlan, who had been continuously on trial during this time, requested several adjournments on the grounds that it was taking him time to get a psychiatrist, and because of a difficulty in obtaining funds to pay for a psychiatrist. Apparently a psychiatrist, Dr. Portnow, had been paid a $200 retainer.

On the second day of trial, Currier handed Judge McGohey a note requesting that his own cross-examination not be resumed until he could be examined by Drs. Blier and Portnow. When the judge asked defense counsel Quinlan if

he wanted to make a motion for adjournment or recess, Quinlan responded:

> I had consulted with psychiatrists and for various reasons I made a judgment not to produce them.

On the day of sentencing, Quinlan again responded to a charge by Currier that his failure to have Currier examined on the insanity issue deprived him of an effective counsel by stating:

> Now, you Honor, in response to some of the remarks made by the defendant, I think that it would be inappropriate for me to refute some of them, because I think that would impinge the lawyer-client privilege. I will just say that every decision that I made along the way in this case involving doctors, or cross-examination, or whatever else, was made in my considered judgment as a trial lawyer, and I will leave it at that.

### I.

Appellant contends that the failure of the trial judge to instruct the jury on the defense of insanity was reversible error. The District Judge refused the requested charge on the grounds that "there was no testimony with respect to that * * *"

■■ This court in United States v. Freeman, 357 F.2d 606, 622 (2 Cir. 1966), adopted the American Law Institute's definition of criminal responsibility, as provided in Section 4.01 of the 1962 Model Penal Code:

> A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law.

The government's burden to prove Currier's sanity beyond a reasonable doubt does not arise until "some evidence" is introduced that will impair the legal presumption in favor of sanity. Davis v. United States, 160 U.S. 469, 16 S.Ct. 353, 40 L.Ed. 499 (1895). Thus in order to raise the issue of insanity at all,

Currier had the burden of producing some evidence sufficient to raise a doubt that, as a result of mental disease or defect, he lacked substantial capacity to appreciate the wrongfulness of his conduct or conform it to the requirements of law. McDonald v. United States, 114 U.S.App.D.C. 120, 312 F.2d 847, 849–850 (1962).

■ Currier has indicated no such evidence, and the record shows that there is insufficient evidence in this case to require a hearing as to his mental competence. It takes more than a mere claim of irresponsibility to raise the issue. Smith v. United States, 122 U.S.App.D.C. 300, 353 F.2d 838, 843 (1965), cert. denied Cunningham v. United States, 384 U.S. 974, 86 S.Ct. 1350, 16 L.Ed.2d 362 (1966). "The function of the trial judge in regard to the issue of sanity is to determine whether that issue is brought into the case by evidence." Tatum v. United States, 88 U.S.App.D.C. 386, 190 F.2d 612 (1951). Currier's self-serving statements that he was "confused" and suffered memory lapses certainly do not indicate a mental disease defect, especially in light of Dr. Lubin's conclusion that these "appeared to be in service of evasion." This court stated in United States v. Knohl, 379 F.2d 427, 436 (2 Cir. 1967), in which an issue of competence to stand trial was raised: "Where the defendant complains of nothing more than memory difficulties, there is inadequate ground for holding an accused incompetent to stand trial." Similarly, Currier's admission that he knew that he was supposed to appear and that he was being sought by the authorities, but deliberately chose not to surrender himself, negate the possibility that he did not appreciate the wrongfulness of his conduct.

### II.

Appellant further contends that the failure of his counsel, Quinlan, to have him examined in connection with the assertion of the defense of insanity de-

prived him of effective representation of counsel.

 Where inadequacy of counsel is alleged, the courts have established stringent requirements. Relief may only be obtained when representation has been so woefully inadequate "as to shock the conscience of the Court and make the proceedings a farce and mockery of justice." United States v. Wight, 176 F.2d 376, 379 (2 Cir. 1949), cert. denied 338 U.S. 950, 70 S.Ct. 478, 94 L.Ed. 586 (1950). "Errorless counsel is not required, and before we may vacate a conviction there must be a 'total failure to present the cause of the accused in any fundamental respect.'" United States v. Garguilo, 324 F.2d 795, 796 (2 Cir. 1963).

We cannot conclude from the record that Currier's trial was a farce, nor was there a total failure to present the cause of the accused on the issue of insanity. Quinlan's considered judgment not to produce the psychiatrists was presumably based on a conclusion that their testimony would not be in Currier's favor. He did, however, request an instruction on the issue based on the doctors' reports which had been introduced, and Currier's own testimony, which was refused.

### III.

Appellant's final contention is that the government failed to prove that he *wilfully* failed to surrender within thirty days of forfeiture, as required by the statute, 18 U.S.C. § 3146.

This contention cannot be maintained. The evidence disclosed that Currier signed the bail bond which provided for consequences of failure to appear, that he was informed by his lawyer that he must appear, that he fled for nine months, changing his name and the registration of his automobile, and that he failed to surrender deliberately, knowing that he was being sought by the authorities. It was not necessary, to prove the element of wilfulness, that Currier knew that bail had been forfeited and that he had thirty days in which to surrender. There was a forfeiture, he knew he had to appear and deliberately absented himself for thirty days thereafter. This was sufficient. United States v. Hall, 346 F.2d 875, (2 Cir.), cert. denied 382 U.S. 910, 86 S.Ct. 250, 15 L.Ed.2d 161 (1965).

Judgment affirmed.

HAYS, Circuit Judge (concurring):

Having dissented in United States v. Hall, 346 F.2d 875 (2d Cir.), cert. denied, 382 U.S. 910, 86 S.Ct. 250, 15 L. Ed.2d 161 (1965), I now acquiesce in the rule there laid down.