**UNITED STATES of America,
Appellee,**

v.

**Alejo MATOS, Appellant.**

**No. 406, Docket 31562.**

United States Court of Appeals
Second Circuit.

Argued March 4, 1969.

Decided April 8, 1969.

Maurice M. McDermott, Asst. U. S. Atty. (Robert M. Morgenthau, U. S. Atty., for the Southern District of New York, Jay Gold Asst. U. S. Atty., on the brief), for appellee.

Joseph J. Marcheso, New York City (David D. Wallerstein, New York City, on the brief), for appellant.

Before LUMBARD, Chief Judge, SMITH, Circuit Judge, and McLEAN, District Judge.*

LUMBARD, Chief Judge:

■ Alejo Matos was convicted, after a two-day trial without a jury, of selling

---

* Sitting by designation.

cocaine without the mandatory written order form, in violation of 26 U.S.C. §§ 4705(a) and 7237(b). He was sentenced on April 11, 1966 to the mandatory minimum of 5 years imprisonment.[1] He makes two claims on appeal: (1) that the government did not prove with competent evidence and beyond a reasonable doubt that he was sane at the time of the crime, and (2) that § 4705(a) is an unconstitutional infringement of the Fifth Amendment privilege against self-incrimination. As we find both of these claims to be without merit, we affirm the conviction.

The government's proof of the illegal sale of 20 grams of cocaine on October 23, 1963 was presented through Agent Angel Gonzales, who gave Matos $500 for the cocaine, and Agent Walter Smith, who observed the activities of Gonzales and Matos. Appellant Matos took the stand in his own defense and denied making the sale. Defense counsel then read the following facts into the record: Matos had been confined in the Matteawan State Hospital from April, 1960 to July, 1962, following his plea of guilty to a charge of manslaughter; on August 1, 1962, as a result of this conviction, Matos received a three year suspended sentence and was placed on probation for five years; in September, 1965, he was arrested for a violation of that probation because of his arrest in the instant case; on October 7, 1965 he was restored to probation; in December, 1965 he was committed to the psychopathic ward of Bellevue Hospital; and on January 4, 1966, he was again restored to probation and directed to take psychiatric treatment.

The government stipulated to the accuracy of the facts regarding Matos' background and responded by calling Dr. William M. Meyen and Dr. A. Leonard Abrams. Dr. Meyen, Assistant Director of Matteawan, testified that Matos was sane when he was discharged from Matteawan in July, 1962, Dr. Abrams, who was in charge of the prison ward at Bellevue, testified that Matos was "without psychoses" at the time he was examined in December, 1965. Both doctors, on the basis of the 1962 and 1965 examinations and the lack of evidence indicating mental illness during the intervening 3½ years, were of the opinion that Matos was legally sane on the day of the offense, October 23, 1963.

■ Although, as appellant admits, the defense of insanity "may have been inarticulately interposed," we agree that it was adequately raised, and that the introduction of Matos' record of prior mental disorder was sufficient to cast upon the government the burden of proving beyond a reasonable doubt that he was sane at the time of the crime. United States v. Currier, 405 F.2d 1039 (2 Cir. 1969); Otney v. United States, 340 F.2d 696, 698 (10 Cir. 1965). We think, however, that the government met this burden. Matos was found to be mentally competent at the time of his release from Matteawan. His testimony concerning his actions at the date of the offense contains no hint that he was then lacking the requisite mental capacity. His confinement at Bellevue apparently was not based upon the presence of a mental disease or defect. Doctors Abrams and Meyen were of the opinion that he was not insane, under the standards of United States v. Freeman, 357 F.2d 606 (2 Cir. 1966), at the time of the offense. This was sufficient evidence for the judge to find beyond a reasonable doubt that Matos was sane at that time, especially in light of the scant evidence of mental illness. Cf. Dusky v. United States, 295 F.2d 743, 754 (8 Cir. 1961), cert. den., 368 U.S. 998, 82 S.Ct. 625, 7 L.Ed.2d 536 (1962); United States v. Westerhausen, 283 F.2d 844, 852 (7 Cir. 1960).

---

1. The narcotics sale allegedly took place on October 23, 1963; the indictment was not filed until October 28, 1965, apparently because Matos was a fugitive during most of this period. We note, however, that the better practice, absent special circumstances, would be for the government to ask for the finding of a sealed indictment within a short period after the crime.

■ Matos argues, however, relying on United States v. Driscoll, 399 F.2d 135 (2 Cir. 1968), that the psychiatrists' testimony, particularly that of Dr. Abrams, was improperly received in evidence, since no warning was given prior to the 1965 psychiatric examination that it might later be used as evidence of sanity at the time of the crime. This argument is without merit. In Driscoll, the district court had appointed a psychiatrist expressly for the purpose of examining the defendant to determine his ability to stand trial. At the trial, the court-appointed psychiatrist testified to the defendant's sanity at the time of the crime. This court, acting in a supervisory capacity, held this to be improper because "the use made of the doctor's testimony clearly went beyond the terms of his appointment" and because it was unfair for the defendant to be "told that he is to be examined for one purpose and, once his cooperation has been obtained, be advised of another." 399 F.2d at 137. No such situation is presented in the instant case. The examinations here were not made at the request of the federal court; they were conducted by New York City and State officials for purposes unrelated to this federal prosecution. In addition, Matos was not told that he was being examined for a limited purpose, as Driscoll had been; thus there is no basis for any claim that he was misled into cooperating. In sum, there is no element of deceit or unfairness such as would warrant excluding the psychiatric testimony in this case.[2]

■ Appellant's second argument, that compliance with the requirements of 26 U.S.C. § 4705(a) would have infringed his Fifth Amendment privilege against self-incrimination, is also without merit. We adhere to our recent decisions that the Fifth Amendment privilege against self-incrimination does not provide a defense to a prosecution for selling narcotics without the mandatory written order form required by 26 U.S.C. § 4705(a). See e. g., United States v. Morales, 406 F.2d 1135 (2 Cir. February 19, 1969); United States v. Oliveros, 398 F.2d 349 (2 Cir. 1968); United States v. Minor, 398 F.2d 511 (2 Cir. 1968).

The conviction is affirmed.

2. We are of the view that United States v. Driscoll, 399 F.2d 135 (2 Cir. 1968) should be limited strictly to its own facts.