**UNITED STATES of America,<br>Appellee,**

v.

**Albert SPENARD, Appellant.**

**No. 409, Docket 33319.**

United States Court of Appeals,<br>Second Circuit.

Argued Jan. 8, 1971.

Decided Feb. 24, 1971.

**718**

Warren H. Colodner, New York City (David R. Hyde, New York City, and Joel C. Balsam, Jamaica, N. Y., on the brief), for appellant.

John J. Kelleher, Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty., S. D. N. Y., and Ross Sandler, Asst. U. S. Atty., on the brief), for appellee.

Before LUMBARD, Chief Judge, and MOORE and SMITH, Circuit Judges.

LUMBARD, Chief Judge:

Albert Spenard appeals from a judgment of conviction of transporting a stolen vehicle in interstate commerce, in violation of 18 U.S.C. § 2312. The judgment was entered in the Southern District of New York on September 18, 1968, after a one-day trial before Judge Thomas F. Murphy and a jury. Spenard was sentenced to five years imprisonment, which term he is presently serving. We affirm.

Prior to his arrest for this crime on May 23, 1965, Spenard had a long history of a psychiatric condition, including numerous hospitalizations for dizziness and findings that he was a schizophrenic with a compulsion to steal cars. He had been periodically confined to mental institutions and a legal guardian had been appointed for him. Following his arrest, he underwent four examinations of his mental condition, pursuant to the orders of the district court. Two of these examinations—one less than two months after the crime and the other just two months before trial—found that, despite his past psychiatric condition, he was then in remission, revealed no overt psychotic manifestations, and hence was competent to stand trial. The other two examinations, which took place between the above two, found that Spenard was indeed a schizophrenic and a psychotic and in need of institutional care.

One month prior to trial, a stipulation was entered into with the government that the indictment would be dismissed if Spenard would agree to be committed to the Vermont State Hospital, but Spenard refused. At the outset of trial, Spenard's counsel stated that the defendant no longer opposed commitment, and he sought a dismissal of the case on the stipulation. But this time the government refused and the trial proceeded.

At trial, Spenard's primary defense was that he lacked the requisite intent for the crime, because he was duped by the machinations of others into the mistaken belief that the car was not stolen. In addition, Spenard's counsel mentioned the defense of insanity, but only in his opening statement and his summation. Spenard testified on his own behalf to the effect that he was only a guest in the car and had no idea that it was stolen; and through him his history of ex-

aminations and treatments for psychiatric and nervous disorders was introduced. Defense counsel, however, called no psychiatrists to testify and made no attempt to relate whatever illnesses had occurred in the past to the crime here charged. Moreover, Spenard himself did not mention a symptom of mental disease or defect which might have affected him at the time of the crime.

At the end of the trial, Judge Murphy charged the jury, in pertinent part, as follows:

> "There has been no medical testimony submitted on the issue of insanity, and on that issue you are not allowed to speculate. In other words, the issue whether by virtue of mental disease or defect he was responsible for his conduct is not in front of you. There has been no testimony, so you cannot consider that issue."

Spenard's counsel did not object to this charge, nor did he request any instructions on the insanity issue.

Spenard's first contention on appeal is that the district court should have directed a verdict of acquittal. The basis for this contention is that enough evidence was introduced at trial relating to Spenard's mental competence at the time of the offense that the burden was shifted to the government to prove Spenard's sanity beyond a reasonable doubt; and since the government offered no evidence at all to establish Spenard's mental competence, a directed verdict was required.

In making this argument, Spenard relies primarily on United States v. Matos, 409 F.2d 1245 (2d Cir. 1969), cert. denied 397 U.S. 927, 90 S.Ct. 934, 25 L. Ed.2d 107 (1970). In that case, defense counsel read into the record, pursuant to a stipulation with the government, evidence of the defendant's prior history of psychiatric care and treatment. We held that that evidence was sufficient to raise the insanity defense and to "cast upon the government the burden of proving beyond a reasonable doubt that [the defendant] was sane at the time of

the crime." 409 F.2d at 1246. In the case at bar, Spenard's argument runs, there was similar evidence of the defendant's long history of psychiatric care and treatment, and under *Matos* that should have been enough to raise the insanity defense and to shift to the government the burden of proving Spenard's sanity. In *Matos*, we found that the government met its burden by introducing expert medical testimony that the defendant was sane at the time of the crime. Here, however, according to Spenard, since the government introduced no evidence of Spenard's sanity, it could not possibly have met its burden.

The government's response is that in the instant case the issue of insanity was not really raised at trial, because Spenard's defense was not that he was insane at the time of the offense, but that he had been duped into believing the car was not stolen. Moreover, according to the government, although Spenard did testify as to his prior history of psychiatric treatment, he neither related his illness to the criminal conduct alleged nor described symptoms or diagnoses from which the finder of fact could conclude that his illness, whatever its severity, was somehow related to the crime. For these reasons, the government argues, there was no need for it to rebut an unraised insanity defense.

We agree with the government. The record shows that it was the deliberate strategy of the defense counsel not to make insanity a real issue at trial. The only mention of Spenard's alleged insanity was in his opening statement and summation and in Spenard's own testimony as to his history of psychiatric care and treatment. Defense counsel's failure to call any psychiatrists or other expert witnesses leads to the conclusion that he thought it inadvisable to make insanity a real issue and engage in a "battle of the doctors," when he knew that some of the doctors' reports found Spenard to have been competent. Furthermore, counsel made no attempt to relate Spenard's history of mental disorders to his alleged criminal conduct in

this case. Finally, defense counsel requested no instructions on the insanity issue and made no objection to Judge Murphy's charge that the jury could not consider that issue.

All this creates the natural inference that Spenard's counsel tried to get the best of both worlds—to defend on the basis that Spenard lacked *mens rea* because he was duped into believing that the car was not stolen, and at the same time to create sympathy for Spenard among the jurors by intimating, but not really arguing, that Spenard might have been somewhat out of touch with reality.

The *Matos* case can be distinguished on the basis that there insanity was a real line of defense, recognized as such by both parties, whereas here Spenard's counsel took pains to raise it only through intimation and as a second line of defense to the "dupe" theory. Indeed, Spenard himself testified quite rationally that he had been duped into believing that the car was not stolen—a theory which the jury clearly rejected.

Thus, unlike the situation in *Matos*, the insanity defense was not adequately raised here, and hence the burden did not shift to the government nor did the government have the obligation of rebutting an unraised defense. As we stated in United States v. Currier, 405 F.2d 1039, 1042 (2d Cir.), cert. denied, 395 U.S. 914, 89 S.Ct. 1761, 23 L.Ed.2d 228 (1969), "[i]t takes more than a mere claim of irresponsibility to raise the issue." The government should not have to prove the sanity of every criminal defendant who has a history of treatment for mental disorder, when the defense advanced is one of innocent misunderstanding and when there is no attempt to relate whatever illnesses occurred in the past to the alleged criminal conduct.

Spenard's second claim is that Judge Murphy erred in charging the jury not to consider the issue of insanity. We reject that contention for the reasons discussed above—i. e., that the issue of insanity was never adequately raised by the defense. Consequently, no instruction was required on that issue and Judge Murphy was correct in charging the jury not to consider it.

■ Spenard's third claim is that he was denied his Sixth Amendment right to effective assistance of counsel, since his counsel failed to support an insanity defense by means of psychiatric records, failed to call any psychiatrists as witnesses, and failed both to request a charge on insanity and to object to the district court's charge that the jury should not consider the insanity issue. Again we disagree. In light of the conflicting report and evidence as to Spenard's sanity, it was perfectly proper for defense counsel to exercise his judgment and conclude that it would be better to play upon the jury's possible sympathy for Spenard's mental condition without becoming involved in a battle of doctors in which there may have been little likelihood of success.

Similarly, counsel's decision not to submit a proposed instruction on insanity and not to object to the district court's charge is entirely consistent with his conclusion that he did not feel that insanity was a real or vital part of his defense. Under these circumstances, the record falls far short of supporting the claim that defense counsel's representation was so inadequate as to shock the conscience or to make the proceedings a farce and mockery of justice. United States v. Wight, 176 F.2d 376, 379 (2d Cir. 1949), cert. denied 338 U.S. 950, 70 S.Ct. 478, 94 L.Ed. 586 (1950) ; United States v. Currier, *supra*, 405 F.2d at 1043 ; United States v. Massimo, 432 F. 2d 324, 326 (2d Cir. 1970).

■ Spenard's last contention is that the Assistant United States Attorney's summation was prejudicial and improper, because he said that there was no insanity issue in the case, when only a month previously the government had agreed to dismiss the case if Spenard would go to the Vermont State Hospital, and when the government had records of Spenard's prior disorders. We reject that contention. If Spenard's theory

were accepted, the government would be precluded from seeking to dispose of criminal charges other than by trial or plea, on pain of being barred from subsequent prosecution.

Affirmed.