UNITED STATES of America ex rel. Willie RICHARDSON, Petitioner,

v.

Daniel McMANN, Warden, Clinton State Prison, Dannemora, New York, Respondent.

No. 71 Civ. 2321.

United States District Court, S. D. New York.

Dec. 13, 1971.

Harry C. Batchelder, Jr., New York City, for petitioner.

Louis J. Lefkowitz, Atty. Gen. of State of New York, for respondent; Brenda Soloff, Asst. Atty. Gen., of counsel.

## MEMORANDUM

BONSAL, District Judge.

In his petition for a writ of habeas corpus as originally filed in the Northern District of New York, petitioner sought relief on the ground that he was the subject of a coerced confession prior to his plea of guilty of murder in the second degree. After his petition was

denied in the Northern District without a hearing, petitioner appealed to the Second Circuit Court of Appeals and, in an affidavit accompanying his brief, sought relief on the additional ground that his assigned counsel in the State Court proceeding was incompetent. The Court of Appeals reversed the District Court's determination, 408 F.2d 48 (2d Cir. 1968), and directed that a hearing be accorded petitioner on both grounds. The Supreme Court granted certiorari, 396 U.S. 813, 90 S.Ct. 65, 24 L.Ed.2d 67 (1969), and by decision reported at 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1969) remanded the proceedings to the Court of Appeals for further consideration in the light of its determination that the issue of a coerced confession could not be raised in a petition for a writ of habeas corpus when followed by a voluntary plea of guilty.

On April 12, 1971, the Court of Appeals "ordered that the case is remanded to the United States District Court for the Southern District of New York for a hearing on the issue of whether the petitioner was represented by incompetent counsel at the time of his guilty plea." The Court of Appeals further ordered that Harry C. Batchelder, Jr., Esq. "be assigned as counsel to represent the petitioner at the hearing in the District Court." Pursuant to the direction of the Court of Appeals, a hearing was held on July 1, 1971, at which Mr. Batchelder represented the petitioner and Brenda Soloff, Esq., represented the respondent. Petitioner testified on his own behalf and the respondent called petitioner's assigned lawyer in the State Court proceeding, Alfred I. Rosner, Esq. In accordance with the direction of the Court of Appeals, the sole issue as to which evidence was taken at the hearing was whether the petitioner was represented by incompetent counsel at the time of his guilty plea.

The Court of Appeals summarized petitioner's allegations as to the representation of Mr. Rosner as follows:

"Appellant states in this affidavit that after indictment for first degree murder (1) Alfred Rosner, Esq., was assigned to represent him; (2) that Mr. Rosner came to see him the last week of June or the first week of July 1963; (3) that his entire visit 'lasted approximately 10 minutes'; (4) that although Mr. Rosner asked what happened, he 'did not take any notes'; (5) that 'He [Mr. Rosner] told me [appellant] that he would get paid the same amount of money for representing me [appellant] regardless of the outcome'; (6) that 'He [Mr. Rosner] did not mention what he intended to do to help me [appellant] or prepare my case'; (7) that the next time (July 22, 1963) he saw Mr. Rosner after the first visit in jail was when appellant was taken to the courtroom; (8) that three or four minutes before the proceeding began, Mr. Rosner told appellant that he should change his not guilty plea to a plea of guilty of second degree murder; (9) that appellant protested that he was not guilty, that the confession was taken because of fear and physical beatings but that Mr. Rosner said that it was not the proper time to bring up the confession and that a guilty plea would save his life and 'then I [appellant] could later explain by a writ of habeas corpus how my confession had been beaten out of me'; (10) that Mr. Rosner said that 'the District Attorney, Mr. Hogan, was an extremely tough man and that he would be in court later'; (11) that Mr. Rosner told appellant that 'the confession would in all probability get me [appellant] the electric chair and that he could attack the confession later without risking his life; that these were the motivating reasons for the change of plea, and that 'I [appellant] did not plead guilty because I had committed the crime.' " 408 F.2d at 50.

In his testimony at the hearing held before me, in addition to making substantially the same allegations with respect to Mr. Rosner as he had made in his affidavit, petitioner alleged that Mr. Rosner did not explain the penalties which

he might receive other than the electric chair, that Mr. Rosner did not ask him whether he could establish an alibi, and that Mr. Rosner never read him his confession. Mr. Rosner then took the stand and in effect denied each of the allegations made by the petitioner. Mr. Rosner testified that he was admitted to the New York bar in 1928 and thereafter was admitted to the bars of the Southern and Eastern Districts, the Court of Appeals of the Second Circuit, and the United States Supreme Court; that he had handled numerous criminal cases, including murder cases (91);[1] that on April 19, 1963, he was appointed by Mr. Justice Schweitzer to represent the petitioner in association with Mr. William P. McCooe; and that on April 20 he read the indictment in which petitioner was accused of two first degree murder counts, one involving the killing of his sister and one involving the killing of his brother-in-law. On that day, he was informed that petitioner was in Bellevue Hospital, and Mr. Rosner made copies of the Felony Court complaint and of defendant's extensive prior criminal record. Pleading, scheduled for April 24, was adjourned to May 9, again to May 29, and again to June 14 as petitioner was still at Bellevue Hospital (93). Mr. Rosner testified that during this period he researched the issue of insanity and the then new Section 1045–a of the Penal Law, McKinney's Consol.Laws, c. 40, providing for a two-stage murder trial. On June 20, he received a copy of the medical report from Bellevue, which he reviewed with his son, who is a doctor, and also researched medical books suggested to him by his son.

Mr. Rosner testified that on June 24 he interviewed the defendant at the Tombs and that the interview lasted from 1:00 o'clock to 2:35 p. m. (94); that he made notes during the course of his interview and the next day, June 25, re-

duced these notes to a memorandum (95). On June 27, petitioner appeared for pleading and pled not guilty, with a specification of insanity. Mr. Rosner testified that he advised the petitioner to do this so as to protect his rights (95), pursuant to Section 336 of the Code of Criminal Procedure.

On July 22, 1963, before Mr. Justice Postel, petitioner, represented by Mr. Rosner and Mr. McCooe, pled guilty to murder in the second degree under the first count of the indictment, to cover all counts of the indictment. Mr. Rosner testified that prior to petitioner's plea, with petitioner's permission, he pleabargained with Assistant District Attorney McKeever; that Mr. McKeever initially offered to accept a plea of guilty to murder in the first degree on both counts of the indictment, which would have subjected petitioner to a sentence of life imprisonment, but that after conferences with Mr. Justice Postel and the chief of the Homicide Bureau of the District Attorney's office, Mr. Herman, petitioner was allowed to plead guilty to murder in the second degree on count one of the indictment, to cover the whole indictment which would subject him to a sentence of not less than twenty years to life. Mr. Rosner stated that before petitioner pled guilty, he and Mr. McCooe explained the plea bargain to him and that petitioner found it acceptable. (96, et seq.)

Mr. Rosner also testified that, prior to petitioner's plea of guilty, he compared the question and answer statement which petitioner had made to Mr. McKeever (the alleged coerced confession) with the statement petitioner gave him on June 24, 1963 in the Tombs, and found both were substantially the same (99), with the exception that petitioner had told him that he killed his brother-in-law first, while he told Mr. McKeever that he killed his sister first.[2] (106)

1. Numbers in parentheses refer to page numbers in the minutes of the hearing before this court.

2. Mr. Rosner's notes made at the time of his interview with petitioner, the memo-

randum he prepared the next day and the question and answer statement made by petitioner to Mr. McKeever were received in evidence and are part of the record.

Mr. Rosner testified that he visited petitioner in the Tombs on July 30, 1963 from 11:50 to 1:25 to prepare for sentencing, and that he received a letter from petitioner following the visit. (101). On October 9, 1963, petitioner was sentenced to a term of 30 years to life.

The court finds that petitioner's testimony at the hearing was strongly motivated by his interest and that his recollection of the events as to which he testified was affected by this interest. The excellent cross examination by Mrs. Soloff brought out many inconsistencies in petitioner's testimony. Petitioner's lack of credibility was most vividly manifested when in response to Mrs. Soloff's question of whether or not he had moved to withdraw his guilty plea, which in fact he had not done, petitioner said:

> "[D]uring the course of my stay in state prison I've written so many writs that it's hard for me to remember just everything that was in the petition." (72)

On the other hand, Mr. Rosner's testimony was well documented and he showed himself to be a lawyer of considerable criminal experience. Obviously Mr. Rosner was seeking through plea-bargaining, to avoid the possibility of petitioner's being sentenced to the electric chair, which could have happened if petitioner went to trial and was convicted of first degree murder.

It should be mentioned in passing, although it is not germane to this proceeding, that nothing was brought out at the hearing which would indicate that petitioner's confession on the day of the murder was coerced or induced by a physical beating. Petitioner conceded he had no injuries but alleged that his glasses were broken at some point.

Finally, there is no evidence that the petitioner at any time protested that he was not guilty of the crimes charged. On the contrary, he admitted the crimes to the police and he admitted them to Mr. Rosner on the occasion of his interview in the Tombs.

Therefore, the court finds that petitioner has proved none of the allegations of incompetency of counsel which he raised in his affidavit accompanying his brief to the Court of Appeals, which allegations were summarized by the Court of Appeals at 408 F.2d at 50.

In his memorandum filed after the hearing, petitioner's present counsel, Mr. Batchelder, asserts a new ground not previously put forward, viz., that Mr. Rosner was incompetent in not following up the Bellevue report by obtaining the services of a competent psychiatrist to determine whether or not petitioner was sane at the time he committed the murders. The Bellevue report, dated June 16, 1963, states that the petitioner "related the events surrounding the offense in a clear, coherent fashion, although with meager detail". In summary, the report states:

> "This patient, with a history of three felonies, has spent approximately one-third of his life in confinement. During the most recent stay in the community he seems to have worked regularly and resorted to alcohol in a binge-like pattern. He seems to be a rather detached, aloof personality prone to harbor resentment who resorts to projective mechanisms and alcohol under stress. His difficulty in expressing hostility is felt to have contributed to the build up and explosive outburst of aggression. There is a striking indifference and resignation concerning the present offense, without distortion of psychotic degree."

The impression of the doctors at Bellevue was that petitioner was "Without Psychosis, Schizoid Personality with Sociopathic and Paranoid Features." The report concludes that petitioner "is not in such a state of idiocy, imbecility or insanity as to be incapable of understanding the charge, indictment, proceedings, or of making his defense."

Petitioner's new ground for attaching the competency of Mr. Rosner's representation is supported by the affidavit of Dr. Jay Katz, an Adjunct Professor of

Law and Psychiatry at Yale University. Dr. Katz, who did not testify at the hearing, based on his examination of the Bellevue report draws the following conclusions:

a. The Bellevue report is defective in that it makes no mention of the petitioner's mental condition at the time of the commission of the offense for which he was charged, to wit, two counts of murder in the first degree;

b. The report's conclusion that the petitioner has a "Schizoid Personality with Sociopathic and Paranoid Features" was sufficiently serious to have warranted further psychiatric investigation as to the petitioner's mental capacity at the time of the commission of the offense;

c. The statement in the report that "[d]etailed testing revealed deficits consistent with organic impairment" certainly warranted further medical investigation, including an electroencephalogram and neurological tests. The report is devoid of information as to whether these were accomplished;

d. Such further investigation might well have revealed that the petitioner was legally insane, under the M'Naghten test, at the time of the commission of the offense; and

e. The discussion of this report by the petitioner's lawyer with a physician who was neither a psychiatrist nor a psychologist and the reading of medical books by the attorney and the brief conversations between the attorney and the petitioner could not in this case constitute a sufficient medical and psychiatric investigation upon which a sound judgment on the validity of an insanity defense could be made.

It is noted that petitioner's claim that Mr. Rosner inadequately explored an insanity defense, which is at odds with petitioner's prior claim that he did not commit the murders, is here raised for the first time after this long proceeding has passed through the Northern Dis-

trict, the Court of Appeals, the Supreme Court, back to the Court of Appeals, and then to this court. If there is to be any certainty at all in the criminal law, the time must come when a halt is called on new grounds to support a petition for habeas corpus. This is particularly true where the charges are founded upon incompetence of counsel, which charges must necessarily be based on hindsight.

As pointed out in Allen v. VanCantfort, 436 F.2d 625, 630 (1st Cir. 1971):

". . . we note that it has been uniformly held that effectiveness of counsel is not to be judged by hindsight, Brubaker v. Dickson, 310 F.2d 30, 37 (9th Cir. 1962), cert. denied, 372 U.S. 978, 83 S.Ct. 1110, 10 L.Ed. 2d 143 (1963), and that the appropriate test is whether counsel's actions were so incompetent as to shock the conscience of the reviewing court. United States ex rel. Boucher v. Reincke, 341 F.2d 977, 982 (2d Cir. 1965). Accord, Bruce v. United States, 126 U.S.App.D.C. 336, 379 F.2d 113 (1967); Turner v. Maryland, 303 F.2d 507 (4th Cir. 1962)."

The record indicates that Mr. Rosner's strategy was not to make insanity the issue; rather, his purpose for raising the defense of insanity was to improve his position in the plea-bargaining process. Had petitioner gone to trial on two counts of first degree murder with a defense of insanity, which would have entailed at least tacit admission by him of the crime, and the details of these two shocking murders been described to a jury, there would have been a very good chance that the jury would nevertheless have found petitioner guilty of murder in the first degree. It is obvious that Mr. Rosner, with the full cooperation of the petitioner, was seeking to, and did, avoid this eventuality through the plea-bargaining process. In view of petitioner's substantial prior criminal record, it appears that Mr. Rosner was eminently successful in the bargain he made.

While, with the benefit of hindsight, other counsel might have conducted the

defense differently, here, as in United States v. Spenard, 438 F.2d 717, 720 (2d Cir. 1971), "the record falls far short of supporting the claim that defense counsel's representation was so inadequate as to shock the conscience or to make the proceedings a farce and mockery of justice. United States v. Wight, 176 F.2d 376, 379 (2d Cir. 1949), *cert. denied* 338 U.S. 950, 70 S.Ct. 478, 94 L. Ed. 586 (1950); United States v. Currier, supra, [2 Cir.] 405 F.2d [1039] at 1043; United States v. Massimo, 432 F. 2d 324, 326 (2d Cir. 1970)." See also United States ex rel. Crispin v. Mancusi, 448 F.2d 233 (2d Cir. 1971).

Accordingly, the court finds that petitioner was not represented by incompetent counsel at the time of his guilty plea.

The foregoing constitutes the court's findings of fact and conclusions of law, F.R.Civ.P. 52(a), and the court certifies to the Court of Appeals the transcript of the hearing held on July 1, 1971, the exhibits which are contained in "Appendix for petitioner Willie Richardson", and the post-hearing briefs submitted by both parties.

It is so ordered.