**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**George Camillo JACQUILLON,
Defendant-Appellant.**

**No. 71–3572.**

United States Court of Appeals,
Fifth Circuit.

Nov. 1, 1972.

Richard E. Norred, Shreveport, La. (Court-appointed), for defendant-appellant.

Donald E. Walter, U. S. Atty., David R. Lestage, Asst. U. S. Atty., Shreveport, La., for plaintiff-appellee.

Before WISDOM, THORNBERRY and GODBOLD, Circuit Judges.

WISDOM, Circuit Judge:

George Camillo Jacquillon, defendant-appellant, appeals from a conviction for bank robbery in violation of 18 U.S.C. § 2113(a). We affirm.

On March 5, 1971, a robber entered the Citizens National Bank in Morgan City, Louisiana, proceeded directly to a teller, and gave her a check drawn on the bank. When the teller informed him that there was no account in the name designated on the check, the robber presented a blank check and directed the teller to read the message on the reverse side. It read: "I have a gun. Give me all big bills or I will shoot you." The teller gave $5,000 in cash and a green bank money bag to the robber, who immediately left the bank.

A bank employee telephoned the police and stated that the robber, wearing a yellow jacket, had just left the bank and was running toward Tri-City Motors, located about a block from the bank. This information was immediately transmitted by radio dispatch to Officer Pierron. A radio malfunction, however, prevented his hearing a description of the clothes the robber was wearing. Officer Pierron quickly drove to the scene and soon observed Jacquillon in a yellow jacket running with a green bag from the Tri-City Motors parking lot. As Jacquillon began to run across the highway, Officer Pierron ordered him to stop. Jacquillon continued to run a few more yards but stopped when the officer repeated his command. Officer Pierron then arrested Jacquillon and seized the green bag. It was a Citizens National Bank money bag containing the stolen currency. Immediately after the arrest, a bank employee who had been following the robber arrived and identified Jacquillon as the man who robbed the bank.

Jacquillon was subsequently indicted by the grand jury and charged with bank robbery in violation of 18 U.S.C. § 2113(a). In response to a joint motion, the district court ordered Jacquillon to be examined by a psychiatrist to determine his competency to stand trial. After a hearing, the district court held that the examination indicated that Jacquillon was competent. At arraignment he entered pleas of not guilty and not guilty by reason of insanity. The district court granted Jacquillon's motion for a bifurcated trial, in which the merits and the issue of sanity would be tried separately. On December 7, 1971, the jury returned a verdict of guilty, and after a separate hearing, found that Jacquillon was sane at the time of the commission of the crime. He was sentenced to serve a term of twelve years.

## I.

On appeal, Jacquillon alleges a number of grounds for reversal. We first meet the contention that there was no probable cause for arrest; that the evidence subsequently seized was the product of an illegal search; and that it should not have been admitted at trial. The standard to be applied in determining probable cause is whether at the moment of arrest the arresting officer had knowledge of facts and circumstances, obtained from trustworthy sources, that would be sufficient to warrant a prudent man in believing that the accused had committed or was committing an offense. Beck v. Ohio, 1964, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142; Wong Sun v. United States, 1963, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441. Jacquillon asserts that the fact that Officer Pierron observed him running with a bag from an area near the bank only minutes after the crime cannot provide the basis for a legal arrest.

Although the flight of the appellant alone is not sufficient to constitute probable cause, it is a fact to be considered. Johnson v. Middlebrooks, 5 Cir. 1967, 383 F.2d 386. The record reveals more than just his flight, however. Officer Pierron knew that the bank had been robbed minutes earlier and that the robber, a male, had been seen running toward Tri-City Motors, located only a block from the bank. Arriving at the scene, the officer observed Jacquillon running with a green bag from Tri-City Motors parking lot. The officer directed Jacquillon to halt. Jacquillon continued to run but stopped when the officer repeated his command. He was then arrested and the green bag was seized. There could be no absolute certainty at this point that Jacquillon was the robber. It is only necessary, however, that there be a reasonable basis for believing that the accused had committed an offense. In the instant case, the robbery, the robber's flight, and the officer's observation of Jacquillon running with a bag in the same area where the robbery occurred were substantially contemporaneous events. Viewing the situation as a whole, we think that there was probable cause for the arrest and that the seizure of the green bag was the product of a lawful search.

## II.

The next contention is that the evidence presented at trial failed to show a "taking by intimidation", as alleged in the indictment and, alternatively, that evidence of intimidation, without additional evidence of "force and violence", could not support a conviction under the indictment as worded.

In relevant part, section 2113(a) prohibits taking "by force and violence, or by intimidation, . . . from the person or presence of another any property or money . . . in the . . . possession of[,] any bank . . ." 18 U.S.C. § 2113(a). The appellant argues that the evidence failed to show "taking by intimidation" because the teller did not see a weapon and was a "light-hearted, nonserious type of person." We find this argument unconvincing.

As used in section 2113(a), intimidation means to make fearful or to put into fear. United States v. Baker, 1955, S.D.Cal.C.D., 129 F.Supp. 684. Proof of actual fear is not required in order to establish intimidation. Rather, it may be inferred from conduct, words, or circumstances reasonably calculated to produce fear. In the instant case, the robber presented the teller with a note, which stated "I have a gun. Give me all big bills or I will shoot you." This tactic is frequently employed by armed robbers and is clearly intended to induce fear. See, e. g., United States v. Epps, 4 Cir. 1971, 438 F.2d 1192. The teller's testimony at trial shows that she was afraid. Certainly, it cannot be said that the jury exceeded the scope of its discretion in finding intimidation.

The appellant also argues that since the indictment alleges a taking by "force and violence *and* by intimidation," proof of intimidation alone is in-

sufficient to support a conviction. (Emphasis added.) Section 2113(a), however, specifies that "force and violence" and "intimidation" are alternative ways in which the offense may be committed. The established rule of pleading in indictments is that such elements are to be alleged in the conjunctive, even though the statute is worded in the disjunctive. Cunningham v. United States, 5 Cir. 1966, 356 F.2d 454; Heflin v. United States, 5 Cir. 1955, 233 F.2d 371. Since proof of either element would support a conviction, we find no merit in the appellant's argument.

### III.

■■ We now turn to a consideration of the contention that the trial court committed error in its charge to the jury. At the outset, we note that Jacquillon's counsel failed to object at trial to the court's instructions but raises these errors for the first time on appeal. The Court, of course, may notice "plain errors or defects" affecting substantial rights even though they were not brought to the attention of the trial court. Fed.R.Crim.P. 52(b); Braswell v. United States, 5 Cir. 1952, 200 F.2d 597. As the plain error rule implies, its application is limited to exceptional situations involving serious deficiencies which affect the fairness, integrity, or public reputation of the judicial proceedings, United States v. Socony-Vacuum, 1940, 310 U.S. 150, 60 S.Ct. 811, 84 L. Ed. 1129, or which constitute obvious error, United States v. Atkinson, 1936, 297 U.S. 157, 56 S.Ct. 391, 80 L.Ed. 555. This strict standard is necessary in order to promote efficient judicial administration and to prevent parties from gambling for favorable verdicts and then resorting to appeal on errors that might have easily been corrected by objection at trial. Bearden v. United States, 5 Cir. 1968, 403 F.2d 782; Kyle v. United States, 5 Cir. 1968, 402 F.2d 443. The multiple and unrelated objections raised initially on appeal in the present case are antithetical to the purpose of the objection. Nevertheless, we have scrutinized the record and considered each of appellant's arguments. We find no plain error.

■ First, the appellant asserts that the trial court's charge to the jury, which referred to taking "by force *or* violence or by intimidation" is error because the statute specifies "force *and* violence." (Emphasis added.) Assuming the court's misquotation to be error, we are persuaded that it was harmless and had no substantial effect on the jury's verdict. The Government clearly based its case on proving taking by intimidation; it conceded that it could not prove "force and violence." The trial judge instructed the jury that intimidation was the alleged means of taking, and the proof was clearly directed toward establishing intimidation. Since the evidence of intimidation was overwhelming, we hold that the error did not contribute to the appellant's conviction.

■ The appellant also argues that the trial court committed plain error when it instructed the jury to "tear that cloak or shield away [i. e. the presumption of innocence], or penetrate it by evidence which you believe credible and which does establish the guilt of the defendant beyond a reasonable doubt." The correctness of the trial court's charge, of course, is not to be measured by an isolated remark but by the charge as a whole. United States v. Rouse, 5 Cir. 1971, 452 F.2d 311; United States v. Green, 5 Cir. 1970, 433 F.2d 946; January v. United States, 5 Cir. 1969, 409 F.2d 31. Immediately after the quoted passage, the trial court reminded the jury that the burden was on the Government to prove every element of the offense beyond a reasonable doubt, that the jury was the sole judge of the facts, that they were not partisans, and that their only interest was to ascertain the truth of the evidence. This statement cured any possible error in the trial court's charge.

■ Finally, the appellant objects to the trial court's statement to the jury that Dr. Bishop, the defense psychia-

trist, had testified that Jacquillon was released from the hospital as a "schizophrenic undeterminable or undetermined, in remission" when the psychiatrist had actually testified that Jacquillon's schizophrenia was "chronic" undifferentiated and in "fair" remission. The variance between these statements is neither substantial nor prejudicial. Furthermore, immediately after the quoted remark, the trial court proceeded to give an accurate and comprehensive statement of the defense psychiatrist's testimony. Viewing the charge as a whole, the court's statement does not constitute plain error.

### IV.

The appellant next contends that he was denied an impartial trial because the trial judge unduly participated in the proceedings, identified himself with the prosecution, and commented on the evidence.

■■■ At the outset, we note that the trial judge is not relegated to silence during a trial. He is more than a mere moderator; he is the governor of the trial process, vested with the duty to insure that the law is properly administered. Quercia v. United States, 1933, 289 U.S. 466, 53 S.Ct. 698, 77 L.Ed. 1321; Herron v. Southern Pacific Co., 1931, 283 U.S. 91, 51 S.Ct. 383, 75 L.Ed. 857; United States v. Marzano, 2 Cir. 1945, 149 F.2d 923. In fulfilling this obligation, he may question witnesses and comment on the evidence. Gomila v. United States, 5 Cir. 1944, 146 F.2d 372; Adler v. United States, 5 Cir. 1910, 182 F.2d 464. He must be careful, however, that his interventions are timely, designed to prevent misunderstanding, and not prejudicial to the accused. United States v. DeLaughter, 5 Cir. 1972, 453 F.2d 908; Burnsten v. United States, 5 Cir. 1968, 395 F.2d 976. Furthermore, his participation must not violate the basic principle that in our system of justice the judicial and prosecu-torial functions are separate and distinct and are not to be merged. Herman v. United States, 5 Cir. 1961, 289 F.2d 362, cert. denied 368 U.S. 897, 82 S.Ct. 174, 7 L.Ed.2d 93. Above all, the trial judge must maintain an attitude of impartiality and avoid giving the impression that he believes the accused is guilty. Otherwise, there is risk of a judge's usurping the function of the jury because of the weight likely to be placed in his opinion. For this reason, our rule has been that if the trial judge chooses to comment on the evidence, he must instruct the jury that they are not bound by his comments or questions. United States v. Musgrave, 5 Cir. 1971, 444 F.2d 755.

■ The appellant argues that the trial judge violated these principles by interfering with the testimony of the appellant's psychiatrist and by twice referring to the "guilt" of the accused during the second stage of the bifurcated trial. A review of the record shows that the trial judge may have participated more than is customary at times. There is no indication, however, that he abused his discretion or identified himself with the prosecution. His questions and comments were relevant to the subject and were intended to dispel ambiguity. Furthermore, the judge instructed the jury that they were the final arbiters of all questions of fact and that they were not bound by his comments or questions. Finally, the trial judge permitted Jacquillon's psychiatrist to express his opinion fully. Although he directed several questions to the psychiatrist, the trial judge did not interfere improperly with the presentation of the case for the defense.

■■ During the second stage of the bifurcated trial, the trial judge erred in referring to Jacquillon's "guilt". We must be careful, however, to avoid magnifying on appeal incidents that were of little importance or signifi-

cance at trial.[1] Glasser v. United States, 1941, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680. Here the trial judge later instructed the jury that the sanity of the accused was an element of the offense and that the Government had the burden of proving the appellant's sanity beyond a reasonable doubt. Furthermore, the accused's counsel failed to raise an objection to any of these alleged errors at trial. In these circumstances, we are convinced that these errors had no substantial effect on the verdict of the jury.

## VI.

■■ ■■ The appellant contends that it was error for the trial court to deny his motion for a new trial. The appellant argues that there was newly discovered evidence, consisting of the testimony of a cab driver who allegedly observed Jacquillon blinking his eyes and twitching his head for a half-hour prior to the crime, and that this evidence was relevant to Jacquillon's mental condition. Motions for a new trial, of course, are addressed to the sound discretion of the trial court. The court's decision will not be reversed without a showing of an abuse of that discretion. Hudson v. United States, 5 Cir. 1967, 387 F.2d 331. In order to justify a new trial, the rule is that the evidence must in fact be newly discovered and that the movant must have exercised due diligence in discovering the evidence. It must not be merely cumulative or impeaching. Furthermore, the new evidence must be material and be such that it would probably produce an acquittal in a new trial. United States v. 41 Cases, More or Less, 5 Cir. 1970, 420 F.2d 1126; Lindsey v. United States, 9 Cir. 1966, 368 F.2d 633; Nagell v. United States, 5 Cir. 1966, 354

F.2d 441; Reno v. United States, 5 Cir. 1965, 340 F.2d 307.

■■ The trial court denied the motion on the ground that the new evidence merely impeached the witness's testimony at trial, during which the cabdriver had stated that there was nothing unusual in Jacquillon's behavior. We agree with the trial court's ruling that this was not a basis for a new trial. Furthermore, the appellant made no showing that he was excusably ignorant of these new facts or that they could not have been discovered by due diligence before the end of the trial. Absent a satisfactory explanation for the failure to produce this evidence at trial, it is within the discretion of the trial court to deny a new trial. Finally, we think that this evidence would not produce a different result even if a new trial were granted.

■■ As an alternative ground for a new trial, the appellant contends that it was error to permit a deputy marshal to testify during the second stage of the trial that Jacquillon told him that he would never be convicted "because of insanity". The appellant objected to this testimony on the ground that it was hearsay and violated the appellant's rights under the Fifth Amendment. Neither point is well taken. The remark clearly was not hearsay, and the appellant cites no case to support his position. Furthermore, it is well settled that an unsolicited remark by an accused, not in response to an interrogation, does not fall within the rule of Miranda v. Arizona, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694; United States v. Trosper, 5 Cir. 1971, 450 F.2d 319; United States v. Powers, 5 Cir., 444 F.2d 260. At trial, the appellant did not contest the deputy's testimony that

---

1. In this respect, the advice of Mr. Justice Frankfurter is appropriate:

    In reviewing criminal cases it is particularly important for appellate courts to relive the whole trial imaginatively and not to extract from episodes in isolation abstract questions of evidence and procedure. To turn a criminal appeal into a quest for error no more promotes the ends of justice than to acquiesce in low standards of criminal prosecution. Johnson v. United States, 1943, 318 U.S. 189, 202, 63 S.Ct. 549, 555, 87 L.Ed. 704.

he previously informed Jacquillon of his rights under *Miranda* and that Jacquillon spontaneously volunteered the remark. Jacquillon did not suggest to the trial court that there was any coercion or subterfuge employed by the deputy. Nor did he request a hearing to determine the voluntariness of the statement. Rather, the issue is raised for the first time in the reply brief on appeal. In these circumstances, we hold that the failure to conduct a hearing was not plain error and that the statement was properly admitted.

## VII.

The appellant's final objection is to the trial court's decision permitting the psychiatrist, who was appointed by the court for the purpose of determining Jacquillon's competency to stand trial, to testify on the issue of Jacquillon's mental condition at the time of commission of the crime.

In response to a joint motion under 18 U.S.C. § 4244, the trial court issued a pre-trial order authorizing an examination of Jacquillon's competence to stand trial. At trial, Dr. Glotfelty, one of the psychiatrists who had examined Jacquillon under this order, testified over an objection on the issue of criminal responsibility. Jacquillon contends that this was reversible error because he was not given notice before the examination that the psychiatrist would testify on this issue.

It is undisputed that the trial court had both inherent and statutory authority to order an examination to determine Jacquillon's mental condition at the time of the commission of the crime. United States v. Albright, 4 Cir. 1968, 388 F.2d 719; 18 U.S.C. § 4244. Furthermore, we have held that a psychiatrist who has previously examined a defendant to determine competency to stand trial may in certain circumstances also be qualified to testify on the issue of criminal responsibility. Birdsell v. United States, 5 Cir. 1965, 346 F.2d 775, cert. denied 382 U.S. 963, 86 S.Ct. 449, 15 L.Ed.2d 366. Whether a psychiatrist is so qualified depends in each instance on what the record reveals was the actual scope of the examination. In the present case, the appellant does not contest the finding that the psychiatrist was qualified to testify on this issue. Rather, his sole objection is that he was not given adequate notice in advance of the examination that Dr. Glotfelty would testify on criminal responsibility. As authority, the appellant cites United States v. Driscoll, 2 Cir. 1968, 399 F.2d 135, in which the Second Circuit held in a similar case that lack of notice offended basic notions of fairness and constituted reversible error.[2] We disagree.

In certain circumstances, to avoid the possibility of prejudice to the rights of the accused, it may be advisable to give advance notice of the intended scope of the examination. Although this was not done in the present case, the appellant has failed to show how he was disadvantaged or prejudiced in any way. There is no suggestion that the procedural safeguards of section 4244 were not adhered to or that the constitutional guarantees against self-incrimination were violated. It is difficult to imagine how notice would have affected the conduct of the examination or the content or credibility of the psychiatrist's testimony. We find therefore that there was no prejudice to the appellant's rights in this case.

For these reasons, the decision of the district court must be affirmed.

---

2. It is instructive to note that the Second Circuit has stated that United States v. Driscoll, 2 Cir. 1968, 399 F.2d 135 should be limited strictly to its own facts. United States v. Matos, 2 Cir. 1969, 409 F.2d 1245.