Shelton WATKINS, Appellant,

v.

UNITED STATES, Appellee.

No. 9929.

District of Columbia Court of Appeals.

Argued May 17, 1977.

Decided Oct. 28, 1977.

**704**

John W. Sansing, Washington, D. C., appointed by this court, for appellant.

Edward C. McGuire, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry, William D. Pease, and David R. Addis, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before GALLAGHER, YEAGLEY and HARRIS, Associate Judges.

YEAGLEY, Associate Judge:

Appellant was convicted, after a jury trial, of three counts of armed robbery[1] and sentenced to three concurrent terms of from 15 years to life imprisonment. He contends that the trial court committed reversible error (1) by not immediately giving, upon request of defense counsel, a cautionary instruction concerning the use of prior convictions which had been introduced for the purpose of impeaching defense witnesses; (2) by commenting to the jury that it was his "impression that witnesses both for the government and for the defense lied", and (3) by making prejudicial remarks to defense counsel in the presence of the jury. Since we find appellant's claims to be unpersuasive, we affirm.

On the afternoon of August 23, 1974, three brothers, Harold, James and Elijah Petway, were in the backroom of the Popeye Barber Salon, located in northeast Washington, D.C. Several other people were in the front of the shop.

According to James and Harold Petway,[2] as they stood in the backroom discussing an attractive woman who was sitting in the front of the shop, appellant and a companion entered through the back door and robbed the Petways.

Appellant's defense was that rather than robbing the Petways, he purchased two bags of narcotics from Harold, and later engaged in a confrontation with him over the inferior quality of the drugs. A witness for appellant testified that he overheard Harold tell the proprietor of the shop that he was tired of having appellant say his narcotics were no good and therefore he was going to contact the police and have appellant locked up for robbery.

I.

The first issue involves the impeachment by prior conviction of each of the three witnesses appellant called in support of his defense. In each instance, the trial judge refused defense counsel's request for an immediate instruction concerning the limited use of the prior conviction. At the conclusion of the evidence, the judge properly informed the jury that the prior convictions should be considered only in evaluating the witness' credibility.

Appellant does not contend that the prior convictions were inadmissible, see D.C.Code 1973, § 14–305, but only that once admitted their use should have been immediately limited and explained to the jury. To support his contention, appellant relies on *Dixon v. United States*, D.C.App., 287 A.2d 89, *cert. denied*, 407 U.S. 926, 92 S.Ct. 2474, 32 L.Ed.2d 813 (1972). Such reliance is misplaced.

---

1. D.C.Code 1973, §§ 22–2901 and 22–3202.

2. Elijah Petway did not testify at trial.

In *Dixon*, we were confronted with "the very real danger" that when a *defendant's* credibility is impeached with a prior conviction the jury might rely "upon the impeaching material rather than the evidence adduced to find him guilty." *Id.* at 92–93. We held, however, that this danger could be overcome if the jury were properly instructed about the limited use of the prior conviction. *Id.* at 93. We further held that the trial judge was not required to give an immediate sua sponte limiting instruction but could give the appropriate instruction at the close of trial. *Id.* at 97–100. We left to the sound discretion of the trial judge the determination whether an immediate cautionary instruction should be given when requested by defense counsel. *Id.* at 99 n. 26.

■ The instant case does not present the same "danger" that confronted the court in *Dixon*. Here, where only witnesses who were not on trial were impeached with prior convictions, the danger of misuse of the convictions is not present. Although an immediate instruction might have been preferable, we find that the end-of-trial instruction was adequate and that defendant was not prejudiced by the delay.

## II.

■ The second issue concerns the trial judge's comments regarding the credibility of defense and prosecution witnesses. We begin our analysis mindful of the admonition that in reviewing the judge's comments to the jury we should evaluate "the charge as a whole, in its totality, without isolating statements which may appear prejudicial from the context in which they were made." *United States v. Williams*, 473 F.2d 507, 509 (5th Cir. 1973); *United States v. Jacquillon*, 469 F.2d 380, 386–87 (5th Cir. 1972), *cert. denied*, 410 U.S. 938, 93 S.Ct. 1400, 35 L.Ed.2d 604 (1973); *United States v. Wilkinson*, 460 F.2d 725 (5th Cir. 1972).

■ This court has adopted the view that a trial judge acts within his province when he assists the jury by examining and commenting upon the evidence. *Prezzi v. United States*, D.C.Mun.App., 62 A.2d 196,

200 (1948). In performing this function, the judge may comment on the credibility of witnesses. *United States v. Carlos*, 478 F.2d 377, 379 (9th Cir. 1973); *United States v. Dixon*, 152 U.S.App.D.C. 200, 202 n. 4, 469 F.2d 940, 942 n. 4 (1972); 9 J. Wigmore, Evidence § 2551 (3d ed. 1940). The judge must, however, carefully explain to the jury that it is their duty to determine the facts and the credibility of witnesses, and he must not leave the jury with the impression that they are bound by his comments. *Prezzi v. United States, supra; Stevens v. United States*, 306 F.2d 834 (5th Cir. 1962). Furthermore, the judge's privilege to comment on the evidence has inherent limitations.

His discretion is not arbitrary and uncontrolled, but judicial, to be exercised in conformity with the standards governing the judicial office. In commenting upon testimony he may not assume the role of a witness. He may analyze and dissect the evidence, but he may not either distort it or add to it. His privilege of comment in order to give appropriate assistance to the jury is too important to be left without safeguards against abuses. The influence of the trial judge on the jury "is necessarily and properly of great weight" and "his lightest word or intimation is received with deference, and may prove controlling." This court has accordingly emphasized the duty of the trial judge to use great care that an expression of opinion upon the evidence "should be so given as not to mislead, and especially that it should not be one-sided"; that "deductions and theories not warranted by the evidence should be studiously avoided." *Starr v. United States*, 153 U.S. 614, 626, 14 S.Ct. 919, 923, 38 L.Ed. 841; *Hickory v. United States*, 160 U.S. 408, 421–423, 16 S.Ct. 327, 332, 40 L.Ed. 474. He may not charge the jury "upon a supposed or conjectural state of facts, of which no evidence has been offered." *United States v. Breitling*, 20 How. 252, 254, 255, 15 L.Ed. 900. It is important that hostile comment of the judge should not render vain the privi-

lege of the accused to testify in his own behalf. *Hicks v. United States*, 150 U.S. 442, 452, 14 S.Ct. 144, 37 L.Ed. 1137; *Allison v. United States*, 160 U.S. 203, 207, 209, 210, 16 S.Ct. 252, 255, 40 L.Ed. 395. [*Quercia v. United States*, 289 U.S. 466, 470, 53 S.Ct. 698, 77 L.Ed. 1321 (1933).]

At trial, appellant put on three witnesses in addition to testifying himself. James Petway, Harold Petway, and Richard Beasley, the proprietor of the shop where the robbery took place, testified for the government. During final instructions to the jury, the trial judge made the following remarks.

Now if I choose to comment on the evidence—not only can I if I want to, but, in this case, I will—my comments are not binding on you. My feelings on the evidence, my comments on the evidence, are not evidence. They are just comments.

You must follow my instructions as to the law, but you are to decide yourselves what the facts were.

Now it is apparent in this case that there was much lying. I'm not going to sit here and suppress my emotions in this regard. There has been lying on both sides, as far as I am concerned.   .   .   .

But I feel that the Government witnesses lied in some respects and the defense witnesses lied in some respects.

.   .   .

It is my impression that witnesses both for the Government and for the defense lied.

However, you are going to have to decide if any of them did. That is your duty, and your duty alone.

If they did not tell the truth, you decide how much weight, you are going to give their testimony.

Remember, the comment I just gave you is not evidence. That is for you to decide. That is merely my comment upon the evidence.

Appellant argues that the trial judge abused his discretion by making these comments because the credibility of the witnesses was the key to guilt or innocence.

He relies on *Quercia v. United States supra*, and *United States v. Cisneros*, 491 F.2d 1068 (5th Cir. 1974). An analysis of these cases however, shows that appellant's reliance is misplaced.

In *Quercia*, the trial judge told the jury that he had observed the defendant wiping his hands as he was testifying. He further stated that in his experience this virtually always indicated the witness was lying and therefore he believed the testimony should be disregarded. The Supreme Court held this comment to be improper. The rationale for the decision was not that the judge's statement concerned a witness' credibility, but that the judge had become a witness when he made the statement concerning the defendant's idiosyncrasy. The Court said:

In the instant case, the trial judge did not analyze the evidence; he added to it, and he based his instruction upon his own addition. Dealing with a mere mannerism of the accused in giving his testimony, the judge put his own experience, with all the weight that could be attached to it, in the scale against the accused. He told the jury that "wiping" one's hands while testifying was "almost always an indication of lying." Why it should be so he was unable to say, but it was "the fact." He did not review the evidence to assist the jury in reaching the truth, but in a sweeping denunciation repudiated as a lie all that the accused had said in his own behalf which conflicted with the statements of the Government's witnesses. This was error and we cannot doubt that it was highly prejudicial. [*Id.* 289 U.S. at 471–72, 53 S.Ct. at 700.]

In *United States v. Cisneros, supra,* a police officer testified that the defendant had sold heroin to a third person in the officer's presence. The alleged purchaser testified that the defendant had not been involved in the transaction and that he did not know him. As the witness left the stand, the judge saw what he believed to be a signal of encouragement or acknowledgement pass between the witness and the defendant. In his charge to the jury, the

judge alluded to his observation suggesting that it undermined the witness' credibility because his testimony had been that he did not know the defendant. The United States Court of Appeals for the Fifth Circuit held that the judge's comment was reversible error. As in *Quercia*, the rationale was not that the judge had commented on the credibility of a witness, but that by making such a comment the judge had become a witness.

Certainly a witness' credibility is measured in part by his demeanor while on the stand. Here, however, the trial judge in effect added evidence about Lopez' demeanor by bringing to the jury's attention something they might well have missed. The thrust of the remarks was that something significant had transpired, something which in the judge's mind reflected on Lopez' credibility, something which the jury could consider if they had seen it. It strikes us as unlikely that a juror would willingly admit to having missed something the trial judge considered important, and even more unlikely that the jury would decline an invitation to consider something the trial judge clearly believed to be significant. By his comments the trial judge became for a short moment a witness in this trial, testifying about something he had seen. In all probability he intended only to exercise his power to comment on the evidence, but instead he added facts, thus violating one of *Quercia's* basic prohibitions. Moreover, he came very close to behaving for an instant as an actual witness for the prosecution. In view of the apparent confusion regarding what actually happened when Lopez left the stand, the judge's comments also seriously interfered with the jury's duty of evaluating credibility and finding the facts. [491 F.2d at 1075.]

■ In the present case, the trial judge's comments concerning the witnesses' credibility were distributed in an evenhanded manner. He referred to both prosecution and defense witnesses. In light of the fact that the witnesses directly contradicted each other, it was inevitable that credibility would become the determinative issue.

Furthermore, the judge informed the jury that his statements were not evidence but merely comments which were in no way binding on the jury. Here, unlike *Quercia* and *Cisneros*, the trial judge neither assumed the role of a witness nor added evidence by his comments. Under the circumstances, we hold that the judge's statement did not prejudice the defendant and therefore did not constitute reversible error. *United States v. Carlos, supra* at 380.

### III.

■ Appellant's final claim concerns the trial judge's comments to defense counsel during the trial. On at least three occasions, the trial judge dealt abruptly and disparagingly with counsel in the presence of the jury. Each time the exchange occurred when defense counsel requested a jury instruction concerning the use of prior convictions which had been introduced for the purpose of impeaching each of three defense witnesses.

On the first occasion the judge suggested that counsel was not familiar with "a basic principle of law that you learn in the first year of law school." On the second occasion, when defense counsel made the request for the jury instruction more specific, the trial judge refused to honor the request and demanded that the defense counsel be seated. On the third occasion, defense counsel was told to sit down, was threatened with being cited for contempt of court with a $100 fine, and again informed that his request betrayed a lack of knowledge of "basic law school education."

In *Williams v. United States*, D.C.App., 228 A.2d 846, 848 (1967), we said

that a trial judge has the responsibility of moving a trial along in an orderly and efficient manner; in short that he has the responsibility of managing the conduct of a trial. But that does not mean over managing, certainly not the point of repeated over participation in examination of witnesses. It surely does not mean repeated discrediting of counsel at the expense of his client.

In *Williams*, the trial judge criticized and "rebuked" defense counsel "a score or more times" and also took over and questioned the defense witnesses at length, injected himself in the defense's cross-examination of two government witnesses, and, on several occasions made belittling remarks to defense counsel. We reversed appellant's conviction, holding "that the repeated criticism and belittling of the lawyer almost certainly prejudiced the defendant in the eyes of the jury." *Id.* at 847.

In the instant case, the trial court did not constantly criticize, rebuke and belittle defense counsel. Its comment that defense counsel erred on "a basic principle of law that you learn in the first year of law school" was disparaging and inaccurate. Under the *Williams* standard, however, we do not find that it rises to the level of prejudicial error. *See Rosenberg v. District of Columbia*, D.C.Mun.App., 66 A.2d 489, 490–91 (1949).

Appellant's convictions are

*Affirmed.*