# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-41441

United States Court of Appeals
Fifth Circuit

**FILED**

February 7, 2018

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

YUNIER PEREZ-MELIS,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before STEWART, Chief Judge, and CLEMENT and SOUTHWICK, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

We decide (1) whether the district court's questioning of a witness during a criminal trial constituted plain error and (2) whether remand to the district court for correction of a clerical error in the final judgment is appropriate. We conclude the district court did not plainly err, and we vacate the final judgment and remand to the district court to correct the clerical error.

## Facts and Proceedings

Perez-Melis was a driver for a produce company in Texas. While at a U.S. Customs and Border Protection checkpoint, two federal agents questioned Perez-Melis about his route and inspected his eighteen-wheel tractor-trailer

with a canine. The dog alerted the agents to the two rear doors of the tractor-trailer, which were secured by a combination lock. When prompted by the agents, Perez-Melis retrieved the combination to the lock from his wallet.

Upon opening the tractor-trailer, the agents encountered three stacks of large watermelon crates lined against the back of the truck. Given the weight of watermelons, the agents found the configuration of the crates unusual. Suspicious, the officers asked Perez-Melis whether he had passed through any weight stations. Perez-Melis indicated that he had indeed passed through one, but he had lost his receipt. The officers then asked him for his logbook and bill of landing tracking his driving hours, in which they found discrepancies. Perez-Melis reportedly became "extremely nervous"[1] during the exchange and gestured frequently with his body and hands.

One of the agents climbed a ladder to look over the crates of watermelons and found six men hiding in the truck. None of them was a citizen or had a legal right to be in the United States. The agents arrested Perez-Melis and charged him with six counts of smuggling illegal aliens into the country, one count for each alien found in the tractor-trailer.

Perez-Melis's trial turned on whether he knew of the presence of the aliens in the back of the tractor-trailer. Julio Alberto Guzman-Perez, one of the aliens, was called to testify. Guzman-Perez explained how he ended up in the tractor-trailer. Born in El Salvador, his sister paid to smuggle him from Mexico into the United States. He crossed the border on a raft and then was taken to a ranch, which functioned as a "stash house." A few days later, a couple of men came to the ranch in a pickup truck and transported Guzman-Perez to the tractor-trailer in which the federal agents eventually found him.

---

[1] Perez-Melis notes that one of the two officers at the checkpoint did not notice signs of nervousness. Moreover, the officer who testified Perez-Melis was "extremely nervous" wrote in his initial report only that Perez-Melis was "acting different."

Both the prosecution and defense counsel asked Guzman-Perez many times over multiple rounds of direct examination and cross-examination who drove the pickup truck that took him to the tractor-trailer. He stated that Perez-Melis had been one of two people in the pickup truck and that Perez-Melis got out of the pickup truck and opened the doors of the tractor-trailer. Guzman-Perez also testified that he had identified Perez-Melis as the person who opened the trailer door for him in a photo lineup. Guzman-Perez initialed the photo next to Perez-Melis's image and wrote "chauffeur" to indicate that he was the driver. Guzman-Perez also saw Perez-Melis when the federal agents removed him from the tractor-trailer.

Guzman-Perez further testified that he was afraid when identifying Perez-Melis at the photo lineup because he was nervous that Perez-Melis "would say that it wasn't him" since "there was a possibility that it wasn't him." Defense counsel asked if he had felt intimidated or scared when he initialed the photo. Guzman-Perez said that he was intimidated because the federal agents told him that if he failed to identify the driver, "they were going to sic the black people on [him]." Guzman-Perez interpreted this threat to mean that he "would be raped." Despite being unable to read or write English, Guzman-Perez signed a statement in English because he "was forced to sign it." When both the prosecutor and defense counsel asked Guzman-Perez if he felt afraid during the trial, however, he answered in the negative.

After a few rounds of direct examination and cross-examination, the testimony became repetitive and somewhat confusing. The district court interjected and posed some questions to Guzman-Perez, including whether he could identify the person who had driven the truck, whether his attorney advised him to testify truthfully, why he was afraid of the federal agents at the time of his arrest but not during the trial, and whether he expected to be deported after his detention. Perez-Melis did not object to this questioning, and

3

before opening statements and after closing statements, the district court issued standard, curative instructions to the jury stating that the jurors should disregard any partiality they detected in the judge.

Perez-Melis testified in his own defense, and he contradicted Guzman-Perez's testimony on several points. He claimed he never drove Guzman-Perez in a pickup truck. He never loaded people into his tractor-trailer. He did not know there were six aliens in his tractor-trailer. And the inconsistencies in his log allowed him enough time to get to Houston because he would be put out of service until he had enough sleep otherwise.

During deliberations, the jury sent a note to the judge requesting a transcript of Guzman-Perez's testimony. The district court responded there was no transcript. The jury also asked whether all six charges leveled against Perez-Melis must receive the same verdict. The judge responded, "No." Finally, the jury asked what should happen if the jurors could agree only on one charge. The district court instructed the jury to return their verdict and write "undecided" on any disputed count.

Ultimately, the jury returned a verdict against Perez-Melis on only one of the six counts of illegal trafficking of aliens. Specifically, the jury found him guilty of transporting Guzman-Perez, but none of the other aliens.[2] The district court dismissed the remaining five counts of the indictment and sentenced Perez-Melis to 27 months of imprisonment and three years of supervised release. The dismissal of the five counts from the indictment was not reflected in the final judgment.

Perez-Melis appealed, arguing that the district court's substantial interference during the examination of Guzman-Perez denied him a right to a

---

[2] We note there was no dispute that authorities found six aliens in the back of the tractor-trailer.

No. 16-41441

fair trial and that under Federal Rule of Criminal Procedure 36 this court should remand to allow the district court to correct the clerical error in the final judgment.

## Discussion

### I. Substantial Interference by the District Court

#### A. Legal Standard

Because Perez-Melis did not object at trial to the district court's questioning of Guzman-Perez, we review only for plain error. *United States v. Saenz*, 134 F.3d 697, 701 (5th Cir. 1998); *United States v. Sanchez*, 325 F.3d 600, 603 (5th Cir. 2003). "Plain error is clear or obvious error that affects substantial rights of the defendant and seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Sanchez*, 325 F.3d at 603 (internal quotation marks omitted).

District courts wield "wide discretion over the tone and tempo of a trial." *Saenz*, 134 F.3d at 701 (internal quotation marks omitted). Federal Rule of Evidence 614 explicitly allows a district court to "examine a witness regardless of who calls the witness." FED. R. EVID. 614(b). A trial court may "elicit facts not yet adduced or clarify those previously presented." *Saenz*, 134 F.3d at 701 (quoting *United States v. Williams*, 809 F.2d 1072, 1087 (5th Cir. 1987)). We have cautioned, however, that "[a] judge's questions must be for the purpose of aiding the jury in understanding the testimony." *Id.* at 702. A district court's actions must not amount to an intervention that could lead a jury "to a predisposition of guilt by improperly confusing the functions of judge and prosecutor." *Id.* (quoting *United States v. Bermea*, 30 F.3d 1539, 1569 (5th Cir. 1994)).

A district court must not "appear to be partial to the prosecution." *United States v. Cantu*, 167 F.3d 198, 202 (5th Cir. 1999). "The jury cannot be regarded as having freely come to its own conclusions about [a witness's] credibility

5

when the court has already indicated, directly or indirectly, that it disbelieves his testimony." *Saenz*, 134 F.3d at 703 (quoting *United States v. Filani*, 74 F.3d 378, 386 (2d Cir. 1996)). This is true because "[t]he influence of the trial judge on the jury is necessarily and properly of great weight and his lightest word or intimation is received with deference, and may prove controlling." *Quercia v. United States*, 289 U.S. 466, 470 (1933) (internal quotation marks omitted). A district court should not express any opinions as to the merits of the testimony or function as a witness. *See United States v. Cisneros*, 491 F.2d 1068, 1072–75 (5th Cir. 1974) (requiring a new trial when district court told the jury "somebody is lying in this case").

Our review of a trial court's actions is based upon the entire trial record. *Id.*; *see Sanchez*, 325 F.3d at 608 ("When viewed as a whole, and the compelling case presented by the prosecution, the district court's conduct does not rise to the level of plain error."). We decide whether, under the totality of the circumstances, a trial judge's intervention is "quantitatively and qualitatively substantial." *Saenz*, 134 F.3d at 702 (quoting *Bermea*, 30 F.3d at 1569). We "determine whether the judge's behavior was so prejudicial that it denied the defendant a fair, as opposed to a perfect, trial." *Id.* (alterations and internal quotation marks omitted) (quoting *Williams*, 809 F.2d at 1086). Even if a trial court's questions "clearly helped" the prosecution, such interference does not necessarily compel a conclusion that the district court plainly erred. *See Sanchez*, 325 F.3d at 607–08. We reiterate, however, that "we will not hesitate to find error when a trial judge forgets that he is no longer at counsel table." *United States v. Achobe*, 560 F.3d 259, 274 (5th Cir. 2008).

*B. The District Court's Questioning of the Witness*

During the trial, defense counsel had begun another round of cross-examination of Guzman-Perez when the prosecution asked to clarify several of defense counsel's questions. The witness appeared confused, and eventually

the court interjected, "Okay, that's enough." The district court then posed a series of questions to Guzman-Perez, most of which the prosecution and defense had already covered.

THE COURT: Do you see the man that drove you in the pickup truck here in court today?

THE WITNESS: Yes.

. . .

THE COURT: And did you see him any other time on the day of your arrest besides the time he drove you in the white pickup?

THE WITNESS: Yes.

. . .

THE COURT: Did you see him at the checkpoint?

THE WITNESS: Yes.

THE COURT: Do you remember seeing him on the checkpoint—at the checkpoint without regard to these pictures? Do you have a separate and independent memory today that this is the man you saw at the checkpoint? Look at the man, not the picture. Look at him. Look at the man in the white t-shirt. Stand up.

THE WITNESS: Yes.

THE COURT: Stand up. Stand up. Who is this man?

THE WITNESS: That's him.

THE COURT: That's him what? He did what?

THE WITNESS: The one that was bringing us in a trailer.

THE COURT: How many times did you see him on the day that he brought you in the trailer?

THE WITNESS: One time.

THE COURT: Where?

THE WITNESS: When they got us out at the checkpoint.

7

No. 16-41441

THE COURT: Did you see him at any other time before that occasion? Did you see him any other time before you saw him at the checkpoint?

THE WITNESS: Yes.

THE COURT: And where did—where was that?

THE WITNESS: In the pickup.

THE COURT: Where is your home?

THE WITNESS: How's that?

THE COURT: What country do you live in?

THE WITNESS: El Salvador.

THE COURT: And how old are you?

THE WITNESS: Twenty-four.

THE COURT: How many years did you go to school?

THE WITNESS: Sixth grade.

THE COURT: And do you read and write Spanish?

THE WITNESS: Yes.

THE COURT: What is your job in Salvador? What work do you do?

THE WITNESS: A farmer.

THE COURT: And do you farm with your family?

THE WITNESS: Yes.

THE COURT: Are you represented by an attorney here today?

THE WITNESS: Yes.

 . . .

THE COURT: What—did she tell you to tell the truth?

THE WITNESS: Yes.

THE COURT: And you afraid of the agents today?

THE WITNESS: No.

THE COURT: Why are you not afraid today but you were afraid on the day of your arrest?

8

No. 16-41441

THE WITNESS: Yes, because they were going to catch us because they were going to detain us.

THE COURT: You are still detained, true?

THE WITNESS: Yes.

THE COURT: And it is your belief you will be deported; is that true?

THE WITNESS: Yes.

THE COURT: Will you be deported whether you tell the truth or whether you lie?

THE WITNESS: Yes.

The district court justified its interjections by explaining: "We were just getting too wobbly." The district court then allowed defense counsel, who did not object to the interruption or the court's queries, to continue questioning Guzman-Perez.

### C. The District Court Did Not Plainly Err

On appeal, Perez-Melis argues that the district court unnecessarily intervened when questioning Guzman-Perez, the government's key witness, regarding matters that were "at the heart of the case." He contends the district court's intervention was unjustified, quantitatively and qualitatively substantial, and it could have led the jury to a predisposition of guilt. Perez-Melis compares his trial to the one we held was unfair in *United States v. Saenz*. He urges that, based on the record as a whole, he was denied a fair trial and the district court plainly erred. We disagree.

The district court's questions as to whether Guzman-Perez could identify Perez-Melis from both the pickup truck and the tractor-trailer had been exhaustively treated by counsel for both sides over multiple rounds of examination. And both the defense and the prosecution had asked Guzman-Perez whether he felt afraid at the time of the trial and at the time he was

presented with the photo lineup. The district court never expressed any opinions about the case. *Cf. Cisneros*, 491 F.2d at 1072–75.

Although some of the district court's questions could be interpreted as rehabilitating the credibility of the witness ("Will you be deported whether you tell the truth or whether you lie?"), Guzman-Perez's testimony was not uniformly helpful to either the prosecution or the defense. *Cf. Saenz*, 134 F.3d at 708. Guzman-Perez was the only witness to identify Perez-Melis,[3] but he testified that he was not sure Perez-Melis was the driver when he initialed the photo. He also testified he felt coerced when the federal agents asked him to participate in the photo lineup. The district court's questioning worked to highlight and distill the key points of the witness's testimony for the jury, not extract new information or express opinions about the case.

Perez-Melis's contention that his trial resembles the one we held was unfair in *Saenz* is unavailing because that case is distinguishable in many respects. The district court did not begin questioning Guzman-Perez until counsel had finished nearly three rounds of direct and cross-examination, and the district court mostly covered questions previously presented by counsel. *Cf. id.* at 707. The district court did not question Perez-Melis himself. *See id.* at 709 (noting we are "particularly sensitive to a trial judge's questioning of the defendant" (quoting *United States v. Carpenter*, 776 F.2d 1291, 1294 (5th Cir. 1985))). And the district court afforded defense counsel the opportunity to continue questioning Guzman-Perez after its interjection. *Cf. id.* at 708–09.

Perez-Melis argues his trial "hinged" largely on the jury's assessment of one witness's credibility, as it did in *Saenz. See id.* at 702–04. But the government's case against Perez-Melis was compelling. There was evidence

---

[3] One other alien was called to testify at the trial. But he never saw Perez-Melis and he could not identify anybody in the photo lineup.

other than Guzman-Perez's testimony supporting Perez-Melis's guilt: he was driving the tractor-trailer in which six undocumented aliens were discovered; he had the combination for the lock securing the tractor-trailer in his wallet; the watermelon crates were stacked in an unusual way; one of the agents testified Perez-Melis was "extremely nervous" or at least "acting different" during the inspection; Perez-Melis claimed he lost the receipt after weighing the watermelons; and there were inconsistencies in his logbook.

Perez-Melis contends his trial was shorter and less complex than the *Saenz* trial, factors we have said are "critical." *See id.* at 703–04. His trial, however, contained an element missing in *Saenz*: Guzman-Perez's testimony was repetitive and somewhat confusing. *See id.* at 704. The witness here appeared confused at times and failed to understand many questions. Moreover, there was some confusion about whether Guzman-Perez had seen Perez-Melis at the pickup truck, the tractor-trailer, or both. ("Your Honor, could you clarify for the purpose of [defense counsel's] question, which truck?") The testimony grew repetitive and the district court eventually intervened: "[O]kay. We've been over this. He's answered that several times." Even in this short and simple trial, we will not say that the subsequent questioning by the district court, which has wide discretion over the tone and tempo of the trial, was plain error.

In summary, based on our review of the record as a whole, the district court did not "trespass on the jury's functions and responsibilities, among the most important of which . . . is the right to assess credibility in finding the facts." *Cisneros*, 491 F.2d at 1074. Although the jury verdict convicting Perez-Melis of only one count of transporting aliens when there was no dispute that six aliens were in the trailer was odd, the "unusual circumstances" that obtained in *Saenz* are not present. *Saenz*, 134 F.3d at 713. The court issued curative instructions to the jury, and to the extent that the district court erred,

No. 16-41441

if at all, we are not persuaded that it "seriously affected the fairness, integrity, or public reputation of the judicial proceeding." *Sanchez*, 325 F.3d at 608–09. Accordingly, we hold the district court did not plainly err when it questioned Guzman-Perez.

## II. Correction of the Final Judgment

Perez-Melis contends that the case should be remanded for correction of the final judgment in accordance with Federal Rule of Criminal Procedure 36[4] because the final judgment does not reflect that five of the charges from the indictment were dismissed. This court has authority to review errors in a judgment for the first time on appeal. *See United States v. Martinez*, 250 F.3d 941, 942 (5th Cir. 2001). The government does not dispute Perez-Melis's claim and it agrees to his requested relief. We remand the case to the district court for correction of the final judgment.

## Conclusion

For the foregoing reasons, we conclude the district court did not plainly err when it questioned Guzman-Perez. We VACATE the judgment of the district court and REMAND for the limited purpose of correcting the final judgment.

---

[4] Federal Rule of Criminal Procedure 36 states: "After giving any notice it considers appropriate, the court may at any time correct a clerical error in a judgment, order, or other part of the record, or correct an error in the record arising from oversight or omission."