*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 11-CF-1669

VERNON HEADSPETH, APPELLANT,

V.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CF3-23586-10)

(Hon. William M. Jackson, Trial Judge)

(Submitted December 11, 2013                    Decided March 13, 2014)

*James Klein*, *Alice Wang*, and *Joshua Deahl*, Public Defender Service, were on the brief for appellant.

*Ronald C. Machen Jr.*, United States Attorney, and *Elizabeth Trosman*, *John P. Mannarino*, *Justin Dillon*, and *Kristina L. Ament*, Assistant United States Attorneys, were on the brief for appellee.

Before BLACKBURNE-RIGSBY and THOMPSON, *Associate Judges*, and RUIZ, *Senior Judge*.

THOMPSON, *Associate Judge*: A jury convicted appellant Vernon Headspeth of aggravated assault while armed, assault with a dangerous weapon, assault with intent to rob while armed, three counts of possession of a firearm during the commission of a crime of violence, assault with significant bodily injury, carrying

a dangerous weapon, possession of an unregistered firearm, and unlawful possession of ammunition. In this appeal, he contends that the trial court erred by giving the jury an instruction that permitted jurors to infer, from the evidence that appellant tried to escape from restraint by the arresting officer, that appellant was conscious of his guilt of the charged offenses. That evidence had been presented without objection, and thus the court had had no occasion to consider, during the presentation of evidence, whether the probative value of the evidence was substantially outweighed by any potential prejudicial impact on the jury. When time came to instruct the jury, the court gave a consciousness-of-guilt (or so-called "flight") instruction (1) without the jury having learned, as the court had learned from counsel's proffers, that there was a "history" between appellant and the arresting officer that might have explained appellant's conduct, and (2) without considering whether, in light of the jury's lack of information about that history, the instruction would be unfairly prejudicial. We are persuaded that in these circumstances the court erroneously exercised its discretion in giving the challenged instruction. Because we cannot say with assurance that the error was harmless, we reverse appellant's convictions and remand for a new trial.

**I.**

The evidence at trial showed that on December 2, 2010, Brandon Jennings was shot near an apartment building at 2643 Birney Place, S.E., in the neighborhood known as Park Chester. Jennings testified at trial that, responding to a telephone call from appellant to "come holler at me," he went to that location to meet appellant, from whom he had regularly purchased marijuana during several months prior to the shooting. After Jennings arrived, appellant produced a gun and instructed Jennings to "give that shit up." Jennings testified that he understood the statement to mean that appellant intended to rob him, and that he therefore ran out of the building, attempting unsuccessfully to knock the gun out of appellant's hands. Jennings heard three gunshots as he ran and was struck by at least one of the bullets. After collapsing on the ground, he was carried by ambulance to a hospital, where he was treated for injuries that included a nearly complete transection of his femoral artery (which caused potentially fatal blood loss), injuries to his bladder, and a two-centimeter tear to his rectum that required him to use a colostomy bag.

When Metropolitan Police Department ("MPD") detectives visited Jennings in the hospital on December 8, 2010, and showed him a photo array, he identified appellant as his assailant. Raymont Owens, a heroin addict who frequented the area where the shooting took place, told police that he had witnessed the shooting, and he likewise identified appellant as the shooter. On December 16, 2010, police obtained a warrant for appellant's arrest.

On December 17, 2010, MPD officer Matthew King was on routine patrol and spotted appellant outside a building located at 2641 Birney Place. After verifying that a warrant remained outstanding for appellant's arrest, Officer King called for backup and then approached appellant, who by that point was inside the building, descending a staircase. Officer King instructed appellant to "come over to me" and "place [your] hands on the wall . . . and spread [your] feet," but (so as not to "scare [appellant] off") did not announce the purpose of the stop or tell appellant that he was under arrest. Officer King put one of appellant's arms behind his back and was attempting to put the second arm behind his back when appellant "pulled away" and "tried to run away" "toward the . . . door to get out of the apartment" building. King testified that he grabbed appellant's jacket, but appellant "kind of roll[ed] out of his jacket," causing both men to fall down the

steps.[1]  King and the backup officers then placed appellant under arrest.  The officers searched appellant's person but found no guns, drugs, or other contraband.

When the court and the parties turned to a discussion of jury instructions, the prosecutor, citing Officer King's testimony about the details of appellant's arrest, asked the court to give the jury an instruction regarding the flight of an arrestee. Defense counsel objected, noting that there was "not a lot of flight because it didn't involve a chase"[2] and questioning whether any flight that did take place could be attributed to consciousness of guilt "if [appellant] didn't know" about the outstanding warrant for his arrest or that he had been accused of a crime.  Counsel also reminded the court of the fact, "not in evidence," that appellant had "a history" with Officer King.  Counsel was referring to the prosecutor's disclosure to the court, several days earlier, that Officer King had arrested appellant in 2009 or 2010 for threatening him and that appellant had been acquitted of the charge after a

---

[1]  Officer King gave this testimony without defense objection.  On cross-examination, he agreed that appellant "resisted arrest and tried to flee from" him.

[2]  Defense counsel also noted that Officer King's report of the arrest did not indicate that appellant had attempted to flee.  (Officer King had testified that his practice was to include information about attempted flight in arrest reports only if the arresting officer had been assaulted or engaged in a lengthy chase in the course of making the arrest.)  Counsel argued that since "it wasn't even significant enough for the officer to put it in his report[,] . . . it doesn't really amount to flight."

bench trial. The prosecutor had also disclosed to the court that in June 2010, while walking his beat in the Park Chester/Barry Farm area (a beat assignment that resulted in Officer King's knowing appellant "pretty well"), Officer King had "locked [appellant] up" on a charge of contempt for violating an order, entered in a marijuana possession case, requiring appellant to stay away from that area.[3] During the colloquy about whether the court would give a flight instruction, defense counsel told the court that this history was "something Your Honor can consider" and "something the [c]ourt can consider . . . in terms of whether this really reaches the level of flight."

The court commented that it was "not sure [appellant] knew that he had a warrant" and also noted that appellant "is a marijuana dealer," implying that he may have sought to avoid being arrested by Officer King for reasons unrelated to the shooting of Jennings. The prosecutor responded that this point could be argued

---

[3]  The prosecutor told the court that appellant had pled guilty to the possession charge and that the court had dismissed the contempt case. During defense counsel's cross-examination of Officer King, the court additionally heard that on occasion the officer "would get on the loudspeaker and tell [appellant] to move on and get off the block and get out of the area," because the police "would get calls for drug complaints and other calls of [appellant] hanging out in front of buildings and . . . people's front yards." Officer King denied the suggestion of defense counsel that he "many times . . . would [use the loudspeaker to] harass or tease [appellant] because he had a stutter[.]"

to the jury, but suggested that it was not a good argument since appellant "didn't actually [have] anything on him" at the time of the encounter with Officer King. Defense counsel stated that he didn't "want to take up much more time" with the discussion, but noted that "technically[,] [appellant] didn't have to obey the officer," who had merely said "[c]ome here" without announcing that appellant was under arrest.

Commenting that the standard flight instruction[4] is "not really a very powerful instruction and [is] . . . reasonably balanced and appropriate," the court agreed to give the instruction, but said that it would modify it to state that appellant had been "confronted by a police officer" rather than "accused of a crime." Thus, after counsel for both sides had delivered their closing arguments, the court instructed the jury as follows:

> [Y]ou have heard evidence that the defendant attempted to flee when approached by the police. Now, it's up to you to decide whether he attempted to flee. If you find that he did so, you may consider his attempt as tending to show feelings of guilt, which you may, in turn, consider as tending to show actual guilt. On the other hand, you may also consider that the defendant may have had reasons to flee that are fully consistent with innocence in this case.

---

[4] See CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA 2.301 (5th Ed. 2012).

> If you find that the defendant attempted to flee, you should consider such evidence along with all the other evidence in this case and give it as much weight as you think it deserves.

During his closing argument, the prosecutor referred as follows to appellant's conduct at the time of his arrest:

> [Y]ou also, of course, have Matt King, who said that . . . when he saw the defendant, he . . . called for backup to make sure he didn't run. It turned out to be pres[cient] because, in fact, the defendant did try to run. He tried to slip out of his jacket and run away, but he didn't get far because backup was right there. . . . Why else would he run — why else would he run if he wasn't guilty?
>
> . . .
>
> Why else would he run when Officer King came up to him, ladies and gentlemen?

The court sustained defense counsel's objection to this line of argument. At the bench, the court admonished the prosecutor that "you can submit that the evidence shows that that's why he ran . . . [but] [y]ou just said that he knew he was guilty." Resuming his closing argument, the prosecutor returned to the issue of appellant's arrest, arguing, "You [know] he ran from Officer King. Why would he run? Why did he run? That's the witness testimony you have in this case, ladies and gentlemen."

On appeal, appellant renews his argument that the "consciousness of guilt" or "flight" instruction was unsupported by the evidence.[5] He contends, *inter alia*, (1) that his conduct during the encounter with Officer King on December 17 "did not amount to flight"; (2) that even if his conduct did amount to flight, there was no reasonable inference that the flight was due to consciousness of guilt of the charged offenses, especially given that appellant "had considerable reasons to avoid Officer King, regardless of whether he had engaged in any wrongdoing."[6]

## II.

This court has cautioned that flight instructions should be used "sparsely." *Logan v. United States*, 489 A.2d 485, 489 (D.C. 1985) (internal quotation marks omitted). Our admonition reflects the criticism, which courts have long leveled,

---

[5] Appellant also asserts that the prosecutor's statements in closing "exacerbated" the trial court's error in giving the instruction.

[6] Appellant emphasizes in addition that his conduct occurred fifteen days after the shooting of Jennings and at a time when he had not been informed that he was under arrest for that shooting, and that there was no evidence that he otherwise knew he was a suspect in the shooting. Thus, appellant argues, his conduct was "too attenuated from the underlying shooting . . . to give rise to any inference of guilt of the charged offenses."

that "it is a matter of common knowledge that men who are entirely innocent do sometimes fl[ee] . . . through fear of being apprehended as the guilty parties[.]" *Alberty v. United States*, 162 U.S. 499, 511 (1896); *see also United States v. Vereen*, 429 F.2d 713, 715 (D.C. Cir. 1970) ("[T]he risk is great that an innocent man would respond similarly to a guilty one when a brush with the law is threatened."). Our caution also reflects a recognition that a trial judge's instructions about permissible inferences may be given great weight by a jury.[7]

Further, we have recognized that if there is "a reasonable alternative interpretation" for a defendant's conduct that is alleged to support an inference of consciousness of guilt, "the probative value largely, if not completely, disappears." *Williams v. United States*, 52 A.3d 25, 41 (D.C. 2012). For that reason, "[w]hen a defendant may have an unrelated strong reason to avoid the police . . . the trial court must consider that reason" before deciding whether even to admit evidence of flight "as relevant to consciousness of guilt of the charged crime." *King v.*

---

[7] *See, e.g., Watkins v. United States*, 379 A.2d 703, 705 (D.C. 1977) ("The influence of the trial judge on the jury is necessarily and properly of great weight and his lightest word or intimation is received with deference, and may prove controlling.") (internal quotation marks omitted); Ronald J. Allen, *Structuring Jury Decisionmaking in Criminal Cases: A Unified Constitutional Approach to Evidentiary Devices*, 94 Harv. L. Rev. 321, 362 (1980) ("Most observers . . . believe that juries are highly influenced by instructions on inferences.").

*United States*, 75 A.3d 113, 119 (D.C. 2013). In applying the "overall standard [of] . . . whether [the] probative value [of the evidence of flight] is 'substantially outweighed' by prejudicial impact," the court must "be confident that the evidence is actually probative [of] guilt of the charged crime[.]" *Id.* at 118 n.7; *see also Williamson v. United States*, 445 A.2d 975, 981 (D.C. 1982) (explaining that the trial court is required to "carefully consider the facts in each case and to determine whether the probative value of such testimony is outweighed by the potential for prejudicial impact.").

"[O]ur cases have acknowledged that the existence of alternative explanations for a defendant's flight — other than consciousness of guilt of the charged crime — will not necessarily preclude the presentation of flight evidence to a jury[.]" *King*, 75 A.3d at 119 n.9. But, just as with respect to the decision whether to admit evidence of flight, the trial court has an "obligation to determine in the first instance[,]" before giving a flight instruction, whether "the circumstances reasonably support an inference that [the defendant] fled because of consciousness of guilt of . . . the charged crime." *King*, 75 A.3d at 119 n.9 (brackets omitted). Further, when giving a flight instruction, the trial court "must fully apprise the jury that flight may be prompted by a variety of motives and thus of the caution which a jury should use before making the inference of guilt from

the fact of flight." *Smith v. United States*, 777 A.2d 801, 807-08 (D.C. 2001) (internal quotation marks omitted).

Where an objection to a jury instruction was preserved at trial, we review the trial court's decision to give the instruction for abuse of discretion. *Wheeler v. United States*, 930 A.2d 232, 238 (D.C. 2007). If we conclude that an instruction was improperly given, we will reverse a conviction unless we are able to say "with fair assurance . . . that the judgment was not substantially swayed by the error." *Kotteakos v. United States*, 328 U.S. 750, 765 (1946).

**III.**

The focus of our analysis is on appellant's argument that "there was no reasonable inference that [his] flight [from Officer King] was due to consciousness of guilt of" any of the charged offenses. However, we begin by addressing briefly the first of appellant's arguments: that his conduct did not amount to "flight." The argument is unavailing, because the appropriateness of a consciousness of guilt instruction does not depend on whether evasive conduct that may evince consciousness of guilt is more akin to flight than to some other form of resistance

to law enforcement. *See, e.g.*, *United States v. Myers*, 550 F.2d 1036, 1049 (5th Cir. 1977) ("It is today universally conceded that the fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself.") (internal quotation marks omitted); *see also Smith*, 777 A.2d at 808 (flight evidence can include evidence of escape or attempted escape from confinement or custody). In addition, we are satisfied that the evasive actions described in Officer King's testimony — that appellant pulled his arms away from Officer King, started to run, and rolled out of his jacket when Officer King grabbed it — constituted sufficient "meaningful evidence" of flight. *Logan v. United States*, 489 A.2d at 489. Notably, it was defense counsel — not the prosecutor, either in opening argument (in which he did not mention the circumstances of appellant's arrest) or direct examination — who, during cross-examination, first characterized the conduct described by Officer King as appellant's having "tried to flee from" the officer.

In assessing whether the trial court erred in giving the flight instruction, it is also important to note that Officer King gave his testimony about appellant's attempt to flee without defense objection, and that defense counsel never asked the court to bar the government from arguing that appellant's conduct when Officer

King attempted to arrest him amounted to flight and showed consciousness of guilt. In these circumstances (i.e., the evidence of appellant's flight was already before the jury and the prosecutor had not been precluded from arguing about what appellant's conduct signified), the flight instruction the court gave usefully told jurors that it was up to them to determine whether appellant had attempted to flee and to consider whether he may have had reasons to flee that were consistent with innocence. Consciousness of guilt of the Jennings shooting was hardly the only inference that could be drawn from appellant's conduct at the time Officer King tried to restrain him; we agree with appellant that his conduct was ambiguous, especially given that the evidence established that he was a marijuana dealer who presumably would have had reasons to avoid the police that were unrelated to any participation in the Jennings shooting. However, "[a] degree of ambiguity for flight evidence is acceptable[,]" and "the standard [flight] instruction deals with the uncertainties by warning the jury that flight does 'not necessarily reflect' consciousness of guilt and 'may be motivated by a variety of factors which are fully consistent with innocence.'" *Comford v. United States*, 947 A.2d 1181, 1187 (D.C. 2008). In other words, the standard instruction contains language that, in many or perhaps most cases, equips jurors to handle ambiguities created by the evidence and by common experience.[8]

---

[8] For example, if, as appellant suggests, his effort to avoid restraint by

(continued…)

Unfortunately, in this case, what the flight instruction did *not* do was alert the jury to the history between appellant and Officer King. To recap, at the time of appellant's arrest in connection with the shooting of Jennings, Officer King had previously arrested appellant for threatening him (a charge of which appellant was subsequently acquitted) and for contempt (a charge that was later dismissed), and may also have been the arresting officer in appellant's underlying marijuana possession case. The court knew this history from the prosecutor's proffer on one of the early days of trial and from a reminder by defense counsel during the colloquy about whether to give a flight instruction, but the jury knew nothing of it.[9]

To be sure, defense counsel's assertion, about the potential prejudicial effect the flight instruction would have under the circumstances, was somewhat weak: counsel stated that the "history" that was not known to the jury was "something

_____

(…continued)
Officer King was no more than an effort to avoid an uncomfortable arm position, that was a possible motive that was likely within the contemplation of jurors based on their own experience, and a motive that the standard flight instruction equipped the jury to consider.

[9] The jury, like the court, had learned from Officer King's testimony that, in response to reports about suspected drug activity, King had frequently told appellant to "move on and get off the block," but jurors were not informed that King had actually arrested appellant on more than one occasion.

Your Honor *can* consider" (italics added). Nevertheless, the court had an obligation to factor that history into a consideration of the potential prejudicial effect of an instruction that not only would highlight the flight evidence, but also would give jurors express permission to infer that appellant's attempt to avoid Officer King "tend[ed] to show actual guilt" of the shooting of Jenkins.

We have said that "[a]s long as the circumstances reasonably support an inference that the accused fled because of consciousness of guilt of the charges . . . and the probative value of the flight evidence is not substantially outweighed by the potential prejudicial impact on the jury, such evidence may be admitted, *and the corresponding instruction may be given*." *Comford*, 947 A.2d at 1187 (quoting *Smith*, 777 A.2d at 808) (italics added and original italics omitted). This statement assumes that the trial court's decision about whether to give a flight instruction will be preceded by the court's weighing of the probative value against the potential prejudicial effect of admitting the flight evidence — something that did not occur here because the flight evidence came in without objection. We hold that where, as here, flight evidence was put before the jury without the court having carried out that balancing test, the court must still, before agreeing to give a flight instruction, weigh probative value against prejudicial effect. Further, the court must decline to give the standard flight instruction if (1) particular information known by the court

but not the jury suggests another reason (i.e., a reason that is unrelated to the charged offense(s)) why the defendant would be motivated to flee from law enforcement (or from a particular law enforcement officer) and (2) there is no reason to think that the jury would envision that other reason.[10]

In this case, the court did not weigh the probative value of the flight evidence against the prejudicial effect of expressly permitting an inference of guilt from that evidence when the jury had no knowledge of the history between appellant and Officer King — a history that, it seems reasonable to assume, would have given appellant a particular aversion to being restrained by Officer King. Even if the court had performed the requisite balancing, we think it could not reasonably have concluded that appellant's effort to remove himself from Officer King's grasp had such probative value that it outweighed the potential prejudice that would ensue from giving jurors the court's permission to regard the flight evidence as evidence of consciousness of guilt, even while they were ignorant of the history that might have explained appellant's reaction. In short, we agree with

---

[10] *Cf. King*, 75 A.3d at 119 & 119 n.9 (holding that the trial court erred in admitting evidence that, after the charged murder, defendant was not at his mother's home for ten days, because the court failed to consider counsel's proffer that the defendant "was on the run for a juvenile matter" and failed to weigh the prejudicial impact that would result if the defense put that information before the jury).

appellant that it was error for the court to give the flight instruction in the circumstances of this case.

## IV.

In light of our finding of error, we may uphold appellant's convictions only if we conclude that the error was harmless, i.e., that it is "highly probable that [the] error did not contribute to the verdict." *Wilson-Bey v. United States*, 903 A.2d 818, 844 (D.C. 2006) (en banc). For several reasons, we are unable to reach that conclusion.

There was no physical evidence linking appellant to the shooting. In addition, by the prosecutor's own acknowledgment, the government's theory of motive was weak: The prosecutor commented that "the jury will have a hard time believing" that appellant sought to rob, and then shot, his customer Jennings, who purchased marijuana from him on an almost daily basis. Jennings, the government's primary witness, was hardly the most credible witness, having acknowledged his involvement in "connect[ing] lower street level people with higher drug dealers" in the cocaine trade. And even though the jury might have

been disposed to believe that Jennings would want to testify truthfully to assist in prosecuting the individual who had caused his near-fatal injuries, there were, as appellant argues, "strong reasons to believe" that Jennings was not being entirely "forthcoming about what had happened on the day of the shooting."

Further, Owens, the only other claimed eyewitness to the shooting, acknowledged that he spoke to police only after his arrest on drug possession charges and that he hoped for leniency in exchange for his testimony. In addition, Owens claimed to have seen the shooting while he was in the midst of "blowing heroin," which he did daily. He had a lengthy criminal record, and although both he and Jennings identified appellant as the shooter, he gave an account that differed in significant ways both from Jennings's account and from his own prior statements and grand jury testimony. Owens told the grand jury that he heard arguing outside the building before hearing gunshots; Jennings's account did not mention any argument with the shooter. Owens told police that the shooting took place around 6:00 p.m.; it actually took place around 1:00 p.m. At trial, Owens admitted that some of what he told police he had seen was actually what others had told him (e.g., details about where Jennings had collapsed). Owens told police that the appellant was wearing a red or yellow jacket; Jennings testified that the jacket

was green and orange. At one point before trial, Owens told a Public Defender Service investigator that he had not witnessed the shooting at all.

As described above, during his closing argument, the prosecutor repeatedly emphasized the evidence of appellant's flight as evidence from which the jury should infer his guilt, rhetorically asking the jurors: "Why else would [appellant] run if he wasn't guilty?"; "Why else would he run when Officer King came up to him, ladies and gentlemen?"; "Why would he run"; and "Why did he run?" We take this repeated emphasis as an indication of how important the government thought the flight evidence — and the flight instruction, which the prosecutor pressed the court to give — were to its case. *Cf. Morten v. United States*, 856 A.2d 595, 602 (D.C. 2004) ("A prosecutor's stress upon the centrality of particular evidence in closing argument tells a good deal about whether the admission of the evidence was meant to be, and was, prejudicial.") (alterations and internal quotation marks omitted).

In light of the foregoing, we are unable to conclude with fair assurance that giving the unwarranted flight instruction made no difference in the outcome of the

case and thus amounted to harmless error. Accordingly, we agree with appellant that he is entitled to reversal of his convictions and a new trial.

*So ordered.*